James WEISS, Plaintiff-Appellant-Cross Respondent-Petitioner,

v.

UNITED FIRE & CASUALTY COMPANY, Defendant-Respondent-Cross Appellant.

Supreme Court

*No. 93–3341. Oral argument September 6, 1995.—Decided December 15, 1995.*

(Also reported in 541 N.W.2d 753.)

For the plaintiff-appellant-cross respondent- petitioner there were briefs by *Toby E. Marcovich, George L. Glonek* and *Marcovich, Cochrane & Milliken*, Superior and oral argument by *Toby E. Marcovich*.

For the defendant-respondent-cross appellant there was a brief by *Michael F. Durst, Terri L. Lehr* and *Weiby, Maki, Durst, Ledin & Bick, S.C.*, Superior and oral argument by *Terri L. Lehr*.

Amicus curiae brief was filed by *Susan J. Reigel* and *Everson, Everson, Whitney & Brehm, S.C.*, Green Bay for the Civil Trial Counsel of Wisconsin.

Amicus curiae brief was filed by *Timothy J. Muldowney* and *LaFollette & Sinykin*, Madison for the Wisconsin Insurance Alliance.

SHIRLEY S. ABRAHAMSON, J. James Weiss, the insured plaintiff, seeks review of an unpublished decision of the court of appeals, *Weiss v. United Fire & Casualty Co.*, No. 93-3341 (Wis. Ct. App. Sept. 27, 1994), affirming a judgment of the Douglas County circuit court, Robert E. Eaton, judge. The judgment granted the motion of the defendant, United Fire and Casualty Company, the plaintiff's insurer, to change answers in the verdict pursuant to Wis. Stat. § 805.14(5)(c) (1993-94), to conform with the circuit court's dismissal of the plaintiff's bad faith claim. In answering the verdict questions relating to the bad faith claim, the jury found (1) that United Fire had exercised bad faith in denying the plaintiff's claim and (2) that $225,000 should be awarded the plaintiff as punitive damages for the tort of bad faith. We reverse the part of the decision of the court of appeals which is

before us[1] and remand the cause to the circuit court with directions to reinstate the jury verdict and to enter judgment in accordance with this decision.

Three issues are presented for our review. First, relying upon the court of appeals' holding in *Heyden v. Safeco Title Ins. Co.*, 175 Wis. 2d 508, 498 N.W.2d 905 (Ct. App. 1993), United Fire contends that the plaintiff cannot prevail on a bad faith tort claim against it without first introducing expert testimony concerning what a reasonable insurer would have done under the particular facts and circumstances to ensure a fair and neutral evaluation of its insured's claim.

We reject the circuit court's and court of appeals' bright-line rule requiring expert testimony in all bad faith tort claims. Cases presenting particularly complex facts and circumstances outside the common knowledge and ordinary experience of an average juror will ordinarily require an insured to introduce expert testimony to establish a prima facie case for bad faith. Under the facts and circumstances of other cases, however, the question of whether an insurer has breached its duty as a reasonable insurer to evaluate its insured's claim fairly and neutrally will remain well within the realm of the ordinary experience of an average juror and therefore will not require expert testimony. As this court has previously stated, "[t]he requirement of expert testimony is an extraordinary one, and is to [be] applied by the trial court only when unusually complex or esoteric issues are before the jury." *White v. Leeder*, 149 Wis. 2d 948, 960, 440 N.W.2d 557 (1989) (citing *Netzel v. State Sand & Gravel Co.*, 51 Wis. 2d 1, 7, 186 N.W.2d 258 (1971)).

---

[1] The remaining parts of the court of appeals' decision, such as the issue of setoff against the plaintiff's compensatory damages award, are not before the court.

Second, United Fire contends that even should we hold, as we do, that the plaintiff was not required to introduce expert testimony to establish his bad faith claim, the verdict should be overturned because the plaintiff failed to introduce sufficient evidence in his case in chief to establish a bad faith claim. Our review of the record, as set forth below, leads us to conclude that the plaintiff produced sufficient evidence in his case in chief to establish his bad faith tort claim; therefore the jury's verdict should stand.

Third, United Fire asserts (1) that the jury did not award the plaintiff compensatory damages on his bad faith claim and (2) that United Fire's conduct does not warrant a punitive damages award. Therefore United Fire contends that even should we uphold the verdict finding that it exercised bad faith in denying the plaintiff's insurance claim, the plaintiff is not entitled to the punitive damages which the jury awarded him. Because we conclude that the jury did award the plaintiff compensatory damages on his bad faith claim and because we also conclude that the evidence supports the jury's finding that punitive damages were warranted, we remand the cause to the circuit court with directions to reinstate the jury's punitive damage award as well.

I.

For purposes of this review the facts are undisputed. Some facts follow and additional pertinent facts are set forth in the discussion of the legal issues.

On the morning of December 20, 1990, the plaintiff set out from his home in Iron River, Wisconsin, to join his family for the holidays. When he arrived in Onalaska, Wisconsin, some five hours later, he was met with the news that a fire had broken out shortly

after he left Iron River; his home had been completely gutted. Three months later, United Fire informed the plaintiff that because it believed he had intentionally set fire to the house, his claim for $149,250 of losses under his fire insurance policy was denied. The plaintiff brought suit against United Fire shortly thereafter, alleging both breach of contract and the tort of bad faith.

A three-day jury trial followed in October of 1993. At the close of the plaintiff's case in chief, the circuit court granted United Fire's motion to dismiss the plaintiff's bad faith claim. Relying on *Heyden*, 175 Wis. 2d 508, the circuit court concluded that the plaintiff's failure to introduce expert testimony regarding the reasonableness of United Fire's conduct in denying the claim was fatal. Citing *Mills v. Regent Ins. Co.*, 152 Wis. 2d 566, 449 N.W.2d 294 (Ct. App. 1989), the circuit court also concluded that, entirely apart from the question of the plaintiff's failure to introduce expert testimony, the plaintiff had failed to produce sufficient evidence to establish a prima facie bad faith claim.

In the interest of avoiding a second trial on the issue of punitive damages in the event that its ruling was reversed, the circuit court nevertheless agreed to submit special verdict questions to the jury regarding the plaintiff's bad faith claim. At the same time, however, the circuit court made clear its intention to abide by its original ruling and direct a verdict for the defendant on the issue of bad faith, regardless of how the jury answered the special verdict questions on bad faith.[2]

---

[2] In the interest of economizing scarce judicial resources, the court has long encouraged circuit judges to reserve ruling on motions challenging the sufficiency of the evidence until after submitting the issue in dispute to the jury so that a remand for a

The jury found that the plaintiff did not intentionally cause the fire to his residence and that United Fire had breached its contract with the plaintiff. The jury also found that United Fire had exercised bad faith toward the plaintiff in its investigation and processing of his claim, and awarded him compensatory and punitive damages.

After the jury was excused, the circuit court reversed the jury's special verdict answers finding that United Fire had breached its duty of good faith and assessing punitive damages against United Fire as a consequence of that breach. The court of appeals affirmed the decision of the circuit court.

## II.

We now turn to the issue of whether expert testimony is required as a matter of law to establish a bad faith claim against an insurer.

To establish a claim for bad faith, the insured "must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 691, 271 N.W.2d 368 (1978). The first prong of this test is objective, while the second prong is subjective. *Benke v. Mukwonago-Vernon Mut. Ins. Co.*, 110 Wis. 2d 356, 362, 329 N.W.2d 243 (Ct. App. 1982).

new trial need not be made if the circuit court's ruling is reversed. *Samson v. Riessing*, 62 Wis. 2d 698, 704-05, 215 N.W.2d 662 (1974); *James v. Heintz*, 165 Wis. 2d 572, 577 n.4, 478 N.W.2d 31 (Ct. App. 1991).

Under the first prong, the insured must establish that, under the facts and circumstances, a reasonable insurer would not have denied or delayed payment of the claim. *James v. Aetna Life & Casualty Co.*, 109 Wis. 2d 363, 370, 326 N.W.2d 114 (Ct. App. 1982). In applying this test, it is appropriate for the trier of fact to determine whether the insurer properly investigated the claim and whether the results of the investigation were subjected to reasonable evaluation and review. *Anderson*, 85 Wis. 2d at 692. In other words, under the first prong of the *Anderson* test, to determine whether the insurer acted in bad faith the trier of fact measures the insurer's conduct against what a reasonable insurer would have done under the particular facts and circumstances to conduct a fair and neutral evaluation of the claim.[3]

In Wisconsin, expert testimony is generally admissible if the person testifying is qualified and if the testimony will help the trier of fact to understand the evidence or to determine a fact in issue. Wis. Stat. § 907.02 (1993-94); *Kerkman v. Hintz*, 142 Wis. 2d 404, 422-23, 418 N.W.2d 795 (1988). A circuit court's decision about admission of expert testimony is largely a matter within the discretion of the circuit court. *Kerkman*, 142 Wis. 2d at 422; *State v. Friedrich*, 135 Wis. 2d 1, 15, 398 N.W.2d 763 (1987).

The court has long recognized that certain kinds of evidence are difficult for jurors to evaluate without the benefit of expert testimony. *Cedarburg Light & Water Comm'n v. Allis-Chalmers*, 33 Wis. 2d 560, 567, 148 N.W.2d 13 (1967). When confronted with such a case,

---

[3] We discuss the second prong and its relation to the facts of this case below.

"the trial court may decline, upon motion, to permit the case to go to the jury in the absence of expert testimony . . . ." *Id.*

But the court has simultaneously emphasized that requiring expert testimony rather than simply permitting it represents an extraordinary step, one to be taken only when "unusually complex or esoteric issues are before the jury." *White,* 149 Wis. 2d at 960. *See also Netzel,* 51 Wis. 2d at 7; *Cedarburg Light & Water Comm'n,* 33 Wis. 2d at 567. Before expert testimony is required the circuit court must find that the matter involved is " . . . not within the realm of the ordinary experience of mankind . . . ." *Cramer v. Theda Clark Mem. Hosp.,* 45 Wis. 2d 147, 150, 172 N.W.2d 427 (1969).

Thus, for example, we have required expert testimony in many cases involving medicine, precisely because medical practice demands "special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning, study, or experience." *Cramer,* 45 Wis. 2d at 150 (collecting cases requiring expert testimony).

Even in the medical realm, however, courts have limited the application of a requirement of expert testimony to those matters outside the common knowledge and ordinary experience of an average juror. Thus the *Cramer* court, for example, reversed a directed verdict for the defendant and held that the injured person need not introduce expert testimony regarding the hospital's alleged negligence and breach of its standard of care because the question of whether the injured person was properly attended and adequately restrained was not "so technical in nature as to require expert testimony."

*Cramer*, 45 Wis. 2d at 153-54. "Consequently," wrote the court, "the trial court should have allowed the issues which could be determined by common knowledge to go to the jury and instructed them on such reasonable care." *Id.* at 154.[4]

Further, the court has "acknowledged the similarity between medical and legal malpractice actions," and has stated that the standard with respect to the need for expert testimony is substantially the same in both types of actions. *Olfe v. Gordon*, 93 Wis. 2d 173, 181, 286 N.W.2d 573 (1980). Thus we have cautioned that, in legal malpractice cases, expert testimony will be required only when related to "legal expertise" of a kind not within the realm of ordinary experience of an average juror. *Olfe*, 93 Wis. 2d at 181. In *Olfe* itself, for example, we held that expert testimony was not necessary to establish that the attorney had acted negligently in failing to draft an offer to purchase and a mortgage according to the client's instructions. *Olfe*, 93 Wis. 2d at 184.

■

Thus "[w]hether expert testimony is required in a given situation must be answered on a case-by-case

---

[4] *See also Kujawski v. Arbor View Ctr*, 139 Wis. 2d 455, 468, 407 N.W.2d 249 (1987) (expert testimony not necessary to establish standard of care applicable to nursing home's decision not to restrain wheelchair-bound patient); *Trogun v. Fruchtman*, 58 Wis. 2d 569, 601, 604, 207 N.W.2d 297 (1973) (expert testimony not necessary to establish material risk in determining what physician should have disclosed so that patient could exercise informed consent); *Froh v. Milwaukee Medical Clinic*, 85 Wis. 2d 308, 315, 270 N.W.2d 83 (Ct. App. 1978) (layperson is able to determine as a matter of common knowledge that a Penrose drain left inside the body will cause infection).

basis." *Netzel*, 51 Wis. 2d at 6. The lack of expert testimony in cases which are so complex or technical that a jury would be speculating without the assistance of expert testimony constitutes an insufficiency of proof. *Cramer*, 45 Wis. 2d at 152.

The question presented in this case is whether it is necessary, in all tort causes of action alleging an insurer's bad faith, that the insured produce an expert witness to testify about what a reasonable insurer would have done under the particular facts and circumstances. The decision in *Heyden* upon which the circuit court relied declared that what a reasonable insurer would have done under the particular facts and circumstances was "a matter beyond the ken of the ordinary juror and, therefore, require[d] expert testimony." *Heyden*, 175 Wis. 2d at 522. No Wisconsin case other than *Heyden* has been cited to support the proposition that an insured must produce expert testimony to establish every bad faith claim.

The *Heyden* court cited *Kujawski*, 139 Wis. 2d at 463, as authority for its conclusion. In the present case the court of appeals conceded, as the plaintiff has argued, that the *Heyden* court's reliance on the *Kujawski* decision was misplaced. *Kujawski* did not involve a bad faith claim. In *Kujawski*, the court concluded that expert testimony was not required to establish the standard of care when a nursing home patient required nonmedical, administrative, ministerial or routine care. *Kujawski*, 139 Wis. 2d at 463. Nevertheless, declaring itself bound by the *Heyden* decision,[5] the court of appeals concluded in this case that it had "no

---

[5] The court of appeals cited *C.J. v. State*, 120 Wis. 2d 355, 358 n.3, 354 N.W.2d 219 (Ct. App. 1984) (published opinions of the court of appeals have statewide precedential effect). *See also* Wis. Stat. § 752.41(2) (1993-94).

alternative but to affirm" the circuit court's directed verdict in United Fire's favor on the issue of bad faith. *Weiss*, unpublished slip op. at 8. The court of appeals nevertheless opined that "requiring expert evidence to establish what a reasonable insurer would have done under the particular facts of a case in every bad faith claim is too rigid . . . ." *Id.*

Adhering to the rules and standards we have previously discussed relating to expert witnesses for medical and legal malpractice cases, we reject, as did United Fire in its presentation before this court, a categorical requirement that the insured produce expert testimony to establish every bad faith claim against an insurer. We conclude that when an insurer's alleged breach of its duty of good faith and fair dealing toward its insured involves facts and circumstances within the common knowledge or ordinary experience of an average juror, an insured need not introduce expert testimony to establish a bad faith claim. To the extent that *Heyden* establishes a contrary rule, it is hereby overruled. Conversely, if the circuit court finds that an insurer's alleged breach of its good faith duty involves "unusually complex or esoteric" matters beyond the ken of an average juror, the circuit court should ordinarily require an insured to introduce expert testimony to establish a prima facie case for bad faith.

We conclude that this case does not present "unusually complex or esoteric" issues requiring expert testimony. Although United Fire contends otherwise, we conclude that in this case the facts and circumstances of United Fire's investigation of the claim and United Fire's analysis of the results of the investigation are within the common knowledge and ordinary experience of an average juror. The investigation at

issue in this case did not involve complex or technical knowledge of the insurance industry or industry practices. Thus the average juror might readily determine, without the benefit of expert testimony, whether United Fire had a reasonable basis for denying policy benefits.

The crux of the plaintiff's position is that United Fire's incomplete and slipshod investigation of the claim prevented it from learning the true facts on which the plaintiff's claim was based. During the course of his case in chief, the plaintiff introduced evidence establishing that United Fire denied his claim for several reasons, including (1) that its investigator, James Miller, concluded that the fire was caused by arson; (2) that the plaintiff's failure to return home immediately after the fire to observe the extent of the damage appeared to be suspicious behavior from which arson could be inferred; (3) that the plaintiff's apparently precarious financial condition provided a motive to set the fire; and (4) that the plaintiff's personal visit to the insurance agency's office to renew his fire coverage shortly before the fire appeared to be suspicious behavior from which arson could be inferred. The plaintiff produced evidence to contradict each of United Fire's contentions.

Investigator James Miller's report was placed in evidence in the plaintiff's case in chief. The plaintiff testified that Miller had removed pieces of wire from the very two areas where Miller claimed that the fire had started. The plaintiff further testified that Miller's report to United Fire did not mention these wires, did not describe any testing of the wires, did not explain the conclusion that the fire was not electrical in origin, and did not explain why or how other accidental causes

for the fire had been ruled out.[6] The jury could have inferred from the evidence that United Fire's investigator had removed the very evidence that might have demonstrated conclusively whether the fire was electrical in origin and then failed either to analyze the wires or to reveal the results of any analysis to the plaintiff.

To further support his claim that United Fire did not carefully investigate or evaluate its suspicion of arson, the plaintiff established during his case in chief (1) that the Iron River fire chief had concluded that the fire was not caused by arson; (2) that the fire chief believed the fire to be electrical in origin; and (3) that it was not uncommon for accidental fires to have two points of origin, even though Miller had relied heavily on the fact that the fire had two points of origin in reaching his conclusion of arson. From this evidence the jury could have inferred that United Fire ignored the conclusions of a knowledgeable firefighter.

The plaintiff also testified that the premises had been rewired two years earlier by a person who was not a licensed electrician. This testimony bolstered the inference from other evidence that the cause of the fire was electrical in origin. It appears that United Fire's

---

[6] United Fire's claims supervisor, whom the plaintiff called as an adverse witness during his case in chief, admitted that she had never verified Miller's qualifications. Had the supervisor examined Miller's qualifications, she might have found that in another fire investigation Miller had also failed to disclose that electrical evidence had been removed from the premises, and that his conduct had triggered a punitive damages award against the insurer in that case. *See Upthegrove Hardware, Inc. v. Lumbermans Mut. Ins. Co.*, 146 Wis. 2d 470, 431 N.W.2d 689 (Ct. App. 1988).

investigation gave no weight to the manner in which the electrical wiring had been installed.

During his testimony, the plaintiff also addressed the issue of why he had declined to return home immediately after learning about the fire. When the plaintiff spoke with Iron River's fire chief after his arrival in Onalaska, he was told that his house was a "total loss" and that he "had no place to come back to." The jury could have inferred that the plaintiff might therefore elect to spend the holiday with his family rather than return to a house which even United Fire's investigator conceded was "uninhabitable."

The United Fire claims supervisor, both in her answers to the plaintiff's interrogatories during discovery and in her testimony at trial during the plaintiff's case in chief, emphasized the importance of the plaintiff's allegedly precarious financial condition in her determination that the plaintiff was responsible for the fire. The jury could have concluded that the supervisor based her assessment of the plaintiff's financial position primarily on her knowledge that the plaintiff was in arrears on both his property taxes and his mortgage payments.

Nevertheless, the plaintiff's own banker testified in the plaintiff's case in chief that a person's net worth could be substantial even if that person's tax and mortgage payments were in arrears. The banker described the plaintiff's arrearages in tax and mortgage payments as "a common condition," and estimated the plaintiff's net worth at the time of the fire at more than $200,000. Finally, the banker testified that he was not "overly concerned" about the plaintiff's financial condition. From this evidence, the jury could have concluded that United Fire failed to explore fully the plaintiff's actual financial condition.

Finally, when the plaintiff renewed his policy on its normal renewal date—just one week before the fire—he did not increase the scope of his coverage. Nor did he purchase business interruption coverage, despite the fact that he had recently begun operating his business from his home. The plaintiff increased the coverage on his house from $75,000 to $79,000, a nominal amount which the plaintiff believed had been recommended by United Fire as an automatic adjustment, presumably to cover appreciation and inflation. Furthermore, the plaintiff introduced evidence in his case in chief that he was underinsured. Thus it was arguably to the plaintiff's disadvantage to collect insurance proceeds.[7]

Hence the jury could have determined that the plaintiff's visit to the insurance agency to renew the policy shortly before the fire did not support the inference that the plaintiff committed arson. The jury could have concluded that United Fire did not even consider the fact that the plaintiff was underinsured—a factor negating a motive for arson—in making its determination that the plaintiff had set fire to the premises.

Upon review of the plaintiff's case in chief, we conclude that the facts presented are neither unusually complex nor esoteric but rather well within the ken of

---

[7] The plaintiff's policy did not insure him for the replacement value of the goods he lost; he received only monies equivalent to his goods' depreciated value. His house was insured for $79,000; United Fire's own investigation concluded that it would cost $93,000 just to make repairs, exclusive of costs for debris removal. The plaintiff's coverage for his personal goods was for just over $39,000; the actual, depreciated cost of his destroyed personal goods as determined by United Fire was $47,000 and the replacement cost was $65,000.

an average juror. The average juror could have determined, without the benefit of an expert witness, whether United Fire acted reasonably when its own investigator failed to report his taking of electrical wires from the scene, when it failed to consider the fire chief's conclusion that the fire was not caused by arson, when it failed to consider the electrical wiring of the house, when it failed to procure full financial information concerning the plaintiff, and when it failed to consider that the premises were underinsured. Accordingly, we conclude that the plaintiff was not required to introduce expert testimony to establish a cause of action in tort against United Fire for a bad faith refusal to honor his claim.

## III.

United Fire also seeks dismissal of the bad faith claim on the alternative ground that, regardless of his failure to introduce expert testimony, the plaintiff also failed to introduce sufficient evidence in his case in chief to support his bad faith claim.[8]

---

[8] We note in passing that the plaintiff's counsel might have been able to incorporate evidence introduced after the conclusion of his case in chief if he had moved to reopen his case in chief. "The general rule is that after the evidence of the defendant is closed the plaintiff will be confined to rebutting evidence, and will not be allowed to produce original or direct evidence on his part, or go into his original case again; but the rule is not inflexible, and the court may, in its discretion, allow or refuse to receive such evidence." *Diener v. Heritage Mut. Ins. Co.*, 37 Wis. 2d 411, 421, 155 N.W.2d 37 (1967) (quoting *McGowan v. Chicago & N.W. Ry. Co.*, 91 Wis. 147, 153, 64 N.W. 891 (1895)). A circuit court "may on its own motion reopen [a case] for further testimony in order to make a more complete record in the interests of equity and justice." *State v. Hanson*, 85

■ A motion challenging the sufficiency of the evidence may not be granted "unless the court is satisfied that, considering all credible evidence in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such a party." Wis. Stat. § 805.14(1) (1993-94). This standard applies both to a motion to dismiss at the close of a plaintiff's case and to a motion for a directed verdict or dismissal at the close of all the evidence when the motion challenges the sufficiency of the evidence. Wis. Stat. § 805.14(3) and (4) (1993-94); *Mills*, 152 Wis. 2d at 570. It also applies both to the circuit court and to "an appellate court on review of the trial court's determination" of the motion. *Millonig v. Bakken*, 112 Wis. 2d 445, 450, 334 N.W.2d 80 (1983).

■ In ruling upon a motion made at the close of a plaintiff's case, a circuit court may not grant the motion "unless it finds, as a matter of law, that no jury could disagree on the proper facts or the inferences to be drawn therefrom," and that there is no credible evidence to support a verdict for the plaintiff. *American Family Mut. Ins. Co. v. Dobrzynski*, 88 Wis. 2d 617, 625, 277 N.W.2d 749 (1979) (quoting *Household Util. Inc. v. Andrews Co.*, 71 Wis. 2d 17, 24, 236 N.W.2d 663 (1976)).

■ Because a circuit court is better positioned to decide the weight and relevancy of the testimony, an

Wis. 2d 233, 237, 270 N.W.2d 212 (1978). In the present case, Miller's testimony, which contradicted Miller's deposition, offered grounds on which either the plaintiff or the court might have moved to allow the plaintiff to reopen his case in chief. We discuss Miller's testimony in more detail below.

appellate court "must also give substantial deference to the trial court's better ability to assess the evidence." *James v. Heintz*, 165 Wis. 2d 572, 577, 478 N.W.2d 31 (Ct. App. 1991). An appellate court should not overturn a circuit court's decision to dismiss for insufficient evidence unless the record reveals that the circuit court was "clearly wrong." *Helmbrecht v. St. Paul Ins. Co.*, 122 Wis. 2d 94, 110, 362 N.W.2d 118 (1985). *See also James*, 165 Wis. 2d at 577; *Olfe*, 93 Wis. 2d at 186.

Three recent court of appeals decisions debate a perceived tension between the "no credible evidence" standard and the "clearly wrong" standard. *See Macherey v. Home Ins. Co.*, 184 Wis. 2d 1, 516 N.W.2d 434 (Ct. App. 1994); *Peterson v. Marquette University*, No. 94-2178, unpublished slip op. (Wis. Ct. App. June 13, 1995); *Platz v. U.S. Fidelity & Guar. Corp.*, 195 Wis. 2d 755, 537 N.W.2d 397 (Ct. App. 1995).

■

This tension described in the decisions of the court of appeals is more illusory than real. As the analysis in *Helmbrecht* itself makes clear, the "clearly wrong" standard and the "no credible evidence" standard must be read together. When a circuit court overturns a verdict supported by "any credible evidence," then the circuit court is "clearly wrong" in doing so.[9] When there

---

[9] *See, e.g., Helmbrecht v. St. Paul Ins. Co.*, 122 Wis. 2d 94, 118, 362 N.W.2d 118 (1985)("We hold that there was substantiated credible evidence to support the jury's finding of malpractice. The trial court was clearly wrong in granting the defendants' motion to dismiss after the verdict was returned"); *Delvaux v. Kewaunee, Green Bay & Western R. Co.*, 167 Wis. 586, 596-97, 167 N.W. 438 (1918) (because "there was credible evidence upon which the jury could arrive at their verdict, the action of a trial court in disregarding such determination is clearly wrong and must be, as it is here, set aside").

is *any* credible evidence to support a jury's verdict, "even though it be contradicted and the contradictory evidence be stronger and more convincing, nevertheless the verdict . . . must stand." *Macherey*, 184 Wis. 2d at 7-8 (quoting *Bergmann v. Insurance Company of North America*, 49 Wis. 2d 85, 88, 181 N.W.2d 348 (1970)). *See also Leatherman v. Garza*, 39 Wis. 2d 378, 387, 159 N.W.2d 18 (1968).

In overturning the jury verdict and dismissing the plaintiff's claim in this case, the circuit court stated that it didn't "see any evidence in the record [in the plaintiff's case in chief] that the insurance company willfully overlooked factual information, tried to hide any factual information, or in any way abused its discretion in making its determination."

Cognizant of the circuit court's superior advantage for judging the testimony, we nevertheless disagree with the circuit court's analysis of the evidence presented in the plaintiff's case in chief. Drawing the inferences as favorably to the plaintiff (the non-moving party) as the evidence in his case in chief permits, we conclude that there is credible evidence that United Fire had no reasonable basis for denying the plaintiff the policy benefits and either knew or recklessly disregarded the absence of a reasonable basis for denying the claim. There was credible evidence that United Fire acted unreasonably in ignoring information that the fire might have been accidental in origin, that the

Thus a circuit court commits error in affirming a jury verdict when there is no credible evidence supporting the jury's finding or in overturning a jury verdict which is supported by any credible evidence. When the circuit court commits such error, an appellate court declares that the circuit court is clearly wrong.

fire might be electrical in origin, and that the fire was not caused by arson. There was credible evidence that United Fire's investigator had removed electrical wires which might have conclusively demonstrated whether the fire was electrical in origin and failed to include information about these wires or their analysis in his report. The record allowed an inference that United Fire's investigator had taken and concealed crucial evidence that might have exonerated the plaintiff.

There was credible evidence that the plaintiff's failure to return home was not suspicious behavior but reasonable under the circumstances.

There was credible evidence that despite United Fire's reliance on the plaintiff's supposedly precarious financial condition, United Fire did not act reasonably when it failed to investigate fully the plaintiff's financial status or to uncover readily available information that the plaintiff's financial health was good.

Furthermore, the plaintiff's underinsured status was credible evidence from which inferences could be drawn that the plaintiff had no motive to commit arson and that the plaintiff's inquiries about renewal of the insurance policy at the local insurance agency's office were routine.

In short, even after giving substantial deference to the circuit court's better "ability to assess the evidence," *James*, 165 Wis. 2d at 577, we conclude that there is credible evidence from which the jury could have inferred that United Fire lacked a reasonable basis for denying the benefits of the plaintiff's policy.[10]

[10] The circuit court relied on *Mills v. Regent Ins. Co.*, 152 Wis. 2d 566, 449 N.W.2d 294 (Ct. App. 1989), in reaching its decision that the evidence the plaintiff introduced during his case in chief was insufficient. *Mills* is readily distinguishable from this case. In upholding the defendant insurer's motion to

Once it has been determined that an insurer has violated the objective prong of the bad faith test, the trier of fact must also determine whether the insurer has violated the subjective prong of the test. The subjective component can be inferred from "a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured." *Anderson*, 85 Wis. 2d at 693; *Mills*, 152 Wis. 2d at 575. The record in this case provides sufficient grounds for the jury to draw such an inference. We therefore conclude that the circuit court was clearly wrong in dismissing the plaintiff's bad faith tort claim at the end of his case in chief.

## IV.

Finally, United Fire argues that even if the court should uphold the jury's finding of bad faith, the jury's award of punitive damages should be overturned. United Fire contends that awarding punitive damages is inappropriate because the jury awarded the plaintiff compensatory damages in conjunction only with his breach of contract claim and not with his bad faith tort

---

dismiss in *Mills*, the court of appeals noted that the insured's tavern which burned had been losing money or, at best, breaking even; that the insured had increased his coverage shortly before the fire; that the fire, which had been set in three separate locations including under the building, had unquestionably been caused by arson—a conclusion bolstered by evidence of a fuse mechanism, an explosion, and numerous empty and full gasoline cans; that an above-average number of arson fires had recently been reported in the area of the tavern; that the insured had been giving away free drinks and souvenirs shortly before the fire broke out; and that the insured submitted a possibly inflated repair claim. *Mills*, 152 Wis. 2d at 571-74.

claim. Moreover, United Fire urges that its behavior toward the plaintiff does not support an award of punitive damages.

Wisconsin does not allow punitive damages to be awarded in the absence of an award of actual damages. *Tucker v. Marcus*, 142 Wis. 2d 425, 438-39, 418 N.W.2d 818 (1988). Nor are punitive damages available as a remedy for breach of contract actions. *Autumn Grove Joint Venture v. Rachlin*, 138 Wis. 2d 273, 279, 405 N.W.2d 759 (Ct. App. 1987). Thus the plaintiff is entitled to punitive damages only if the jury awards him compensatory damages on his bad faith claim. Therefore, we first analyze the record to determine whether the jury awarded the plaintiff compensatory damages on his bad faith claim.

Following the instruction conference, the circuit court submitted the following four questions to the jury:

> QUESTION NO. 1: Did the plaintiff James C. Weiss intentionally cause the loss insured by the policy of insurance issued by the defendant United Fire and Casualty Company?

> QUESTION NO. 2: If you answered Question No. 1 "No," then answer this question: What amount of benefits under the policy and consequential damages is plaintiff James C. Weiss entitled to recover pursuant to the insurance policy with defendant United Fire & Casualty Company?

> QUESTION NO. 3: If you have answered Question No. 1 "No," then answer this question: Did the defendant United Fire & Casualty Company exercise bad faith in denying the claim of James Weiss?

393

QUESTION NO. 4: If you answer Question No. 3 "Yes," then answer this question: What sum of money do you assess against defendant United Fire & Casualty Company as punitive damages?

During the jury instruction conference, counsel for United Fire objected to this verdict form on the ground that the verdict questions did not differentiate between the compensatory damages for the loss sustained under the policy (breach of contract) and for the tort of bad faith. United Fire wanted a special verdict question form asking separate compensatory damage questions for each of the plaintiff's two claims.

The circuit court concluded that its verdict form adequately addressed the damages issues. The jury answered "No" to the first question and proceeded to award the plaintiff $225,000 under question No. 2. The jurors then answered "Yes" to the third question and proceeded to award the plaintiff an additional $225,000 under question No. 4.

Bearing in mind that "[w]e must assume the jury followed the instructions," *Johnson v. Pearson Agri-Systems, Inc.*, 119 Wis. 2d 766, 776, 350 N.W.2d 127 (1984), we conclude on the basis of the record (which is, we concede, somewhat confusing) that the jury awarded the plaintiff compensatory damages for his bad faith claim. First, with both parties' approval, the jury was given the pattern jury instruction on the elements of the tort of bad faith[11] and the pattern jury instruction on punitive damages.[12] These instructions were given together and were separated from the instructions on the breach of contract claim. The

---

[11] Wis JI—Civil 2761 (1991).

[12] Wis JI—Civil 1707 (1994).

instruction on punitive damages relating to the tort claim clearly and succinctly states that punitive damages may be awarded "in addition to compensatory damages, if you [the jury] find that the defendant's conduct was outrageous" and then proceeds to admonish the jury that you "may not, however, award punitive damages unless you have awarded compensatory damages." The instructions thus spelled out the relationship between compensatory and punitive damages on the tort claim.

If the jury were to adhere to the instruction that punitive damages were not to be awarded unless the jury awarded compensatory damages, the jury would have had to award compensatory damages for the bad faith claim. The only place the jury could make an award of compensatory damages for the bad faith claim was in response to question No. 2.[13]

Second, the jury's award to the plaintiff in response to question No. 2 for "benefits [due] under the policy and consequential damages" was in the amount of $225,000. This amount exceeded the plaintiff's claim for $149,250 under the policy.[14] To give full effect to the jury's verdict, we have to conclude that the jury thought that "benefits due under the policy" referred to

[13] The circuit court had instructed the jury to award compensatory damages in an amount that would reasonably compensate the plaintiff for all losses that were the natural and probable results of United Fire's breach of contract. The circuit court did not, however, give two instructions about compensatory damages, one for the breach of contract claim and one for the tort claim of bad faith.

[14] Neither party elected to place the opening and closing arguments on the record. Thus the court does not know whether plaintiff's counsel subsequently asked the jury for damages greater than those to which he had laid claim in his complaint.

395

the plaintiff's breach of contract claim for $149,250, while "consequential damages" referred to additional damages due the plaintiff under his bad faith tort claim.[15]

This interpretation of the jury verdict was proposed by United Fire in its brief as cross appellant before the court of appeals. United Fire argued that "[a]ny damages awarded by the jury over and above this amount [of $149,250.00] must necessarily represent compensatory damages attributable to the tort of bad faith." Brief for Cross Appellant at 11, *Weiss v. United Fire & Casualty Co.*, No. 93-3341 (Wis. Ct. App. Sept. 27, 1994).[16] Hence it is rather late in the case for United Fire to argue for the first time before this court that "[i]t is clear that all of the damages awarded by the jury, with the exception of punitive

[15] Before the court of appeals, United Fire contended that any reference to consequential damages in the instruction was erroneous because the plaintiff was entitled only to the benefits payable under the terms of the insurance contract. The court of appeals did not address this issue, asserting that United Fire waived this objection because it had failed to object at the circuit court to the special verdict question on this ground.

[16] Nor was this argument an aberration. United Fire made the same argument in its memorandum in support of its motions after the verdict, in which it stated that "[a]ny damages in addition to the policy proceeds are attributable to the alleged tort of 'bad faith' which was dismissed by the Court at the close of the plaintiff's case." Repeating this argument, United Fire stated that "[t]he damages which [the plaintiff] contends he sustained over and above the benefits under the insurance policy are compensatory damages which would flow from the tort of bad faith." Because this court denied United Fire's petition for cross review of the award of consequential damages under the second special verdict question, United Fire has not had occasion to advance such an argument here.

damages, were awarded for the breach of contract claim." Brief for Cross Appellant at 33.

On the basis of the record before us, the better argument was the one United Fire made in the circuit court and court of appeals: that in responding to the second verdict question the jury addressed compensatory damages for the breach of contract and the bad faith tort claims. Accordingly, because we conclude that the jury awarded the plaintiff compensatory damages for his bad faith tort claim, the necessary prerequisite exists for upholding a punitive damages award on the same claim.

Turning to the award of punitive damages itself, United Fire contends that there was insufficient evidence to warrant the jury's punitive damages award. United Fire points out that punitive damages in bad faith insurance cases are only appropriate when, above and beyond a finding that an insurer has acted in bad faith toward its insured, there has been an additional showing that the insurer has manifested an "evil intent deserving of punishment or of something in the nature of special ill-will or wanton disregard of duty or gross or outrageous conduct." *Anderson*, 85 Wis. 2d at 697. United Fire argues that the plaintiff has failed to make such a showing.

We disagree with United Fire. As we have stated previously, "[t]o sustain an award for punitive damages, the law does not require a specific finding of an intentional and ruthless desire to injure, vex or annoy. The injured party need show only a wanton, willful or reckless disregard of the rights of others on the part of the wrongdoer." *Fahrenberg v. Tengel*, 96 Wis. 2d 211, 221, 291 N.W.2d 516 (1980).

Searching (as we are required to do) for evidence to sustain the jury's verdict, *Fehring v. Republic Ins. Co.*, 118 Wis. 2d 299, 305-06, 347 N.W.2d 595 (1984), and drawing (as we are required to do) those reasonable inferences that were presumably drawn by the jury in reaching its verdict, we conclude that there is credible evidence to support the jury's award of punitive damages.

The primary witness for the defense was United Fire's investigator James Miller. When cross examined by counsel for the plaintiff, he could not explain why he had removed electrical wires from the scene, why he had failed to record his possession of those wires in his evidence log, why he had failed to mention the wires when asked in his deposition to account for all of the evidence he had removed from the scene, and why, given that he was not an electrical engineer, he had failed to hire an expert to examine either the wires he had removed or the electrical wiring in the plaintiff's home before eliminating the possibility that the fire was electrical in origin. Miller also admitted that the electrical entry box on the plaintiff's home had only one-third of the capacity this home required. Finally, on the last day of trial, Miller testified that he had not only removed and forgotten to record the aforementioned wires, but that he had also forgotten to record having taken an electrical fixture removed from one of the fire's two origin points.

In another case in which Miller discarded similar electrical evidence indicative of a possible electrical fire, the court of appeals upheld an award of punitive damages. The court of appeals explained that decision as follows:

> [E]vidence indicating that Lumbermans' investiga-
> tors lied about what they found in their
> investigation and knowingly destroyed what might
> have been a crucial piece of evidence permitted the
> jury to conclude that Lumbermans did not have a
> good faith belief that the fire was caused by arson
> and that it acted with malice or ill will in investigat-
> ing and denying the claim.

*Upthegrove Hardware, Inc. v. Lumbermans Mut. Ins. Co.*, 146 Wis. 2d at 483-84.[17]

In this case, the jury had even more evidence on which to base its determination of punitive damages. Not only did United Fire's investigator both remove and then fail to test or acknowledge possessing potentially dispositive evidence, but United Fire's home office failed to take into account the fact that the plaintiff was underinsured. Furthermore, United Fire's home office failed to investigate fully the plaintiff's finances even though the negative inferences drawn from its limited financial information played a large role in its ultimate decision to deny the plaintiff's claim. Viewing this evidence in the light most favorable to the plaintiff, we must sustain the jury's award which was reached on the basis of proper instruction regarding the "outrageous" behavior that makes punitive

---

[17] In *Upthegrove* as well as in the present case, other witnesses refused to rule out the possibility that the fire being investigated was electrical in origin. There, as here, those witnesses were denied the opportunity to investigate evidence of an electrical fire—a lamp cord—because of Miller's conduct. For example, Rodney Pevytoe, an investigator employed by the Arson Bureau of the Wisconsin Department of Justice who testified in this case that he could not rule out the possibility that the fire was electrical in origin, neither knew of nor had access to the wires and fixture in Miller's possession.

damages appropriate. *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 268, 294 N.W.2d 437 (1990).

For the reasons set forth, we reverse the part of the decision of the court of appeals which is before us and remand the cause to the circuit court with directions to reinstate the jury verdict and to enter judgment in accordance with this decision.

*By the Court.*—The part of the decision of the court of appeals which is before us is reversed; the cause is remanded to the circuit court with directions to reinstate the jury verdict and to enter judgment in accordance with this decision.