Carl Edward Rucker, Plaintiff-Appellant,
v.
Jewel Food Store and Erick Anderson, Defendants-Respondents.
No. 03-3467.
Court of Appeals of Wisconsin.
Opinion Filed: December 7, 2004.
Before Wedemeyer, P.J., Fine and Curley, JJ.
¶1 PER CURIAM.
Carl Rucker, pro se, appeals the trial court's grant of summary judgment to Jewel Food Store and an employee of Jewel, Erick Anderson (collectively, "Jewel"), in Rucker's suit seeking damages for food poisoning that he alleges occurred as a result of eating some packaged turkey product purchased at Jewel. Because Rucker was unable to establish by expert testimony that he actually suffered from food poisoning or that the turkey caused his illness, we affirm.

I. BACKGROUND.
¶2 In early May 2001, Rucker purchased a packaged turkey product at a Jewel Food Store. Several hours after consuming several slices of the turkey, he went to an emergency room complaining of severe stomach pain. Months later, he attempted to take the remaining turkey back to the store for a refund. Erick Anderson refused to accept it, and, according to Rucker's complaint, "berated [Rucker] in front of his staff and the public." Rucker filed suit against both Jewel and Anderson seeking $2700 for medical expenses, an unspecified amount for pain and suffering, and punitive damages for fraud and deceit.
¶3 After bringing the suit, numerous delays occurred. Rucker failed to attend a scheduling conference, refused to permit an inspection of the turkey, and did not comply with several discovery requests. Rucker filed a motion for substitution of judge, requesting that the case be transferred to another judge. Jewel objected to the substitution, claiming that it was untimely. At a hearing, the original judge assigned to the case determined that the substitution request was not timely pursuant to WIS. STAT. § 801.58(1); however, the trial judge then recused himself. Problems then arose with regard to Rucker's discovery requests and the cost of depositions. Eventually, depositions were taken of the emergency room doctor, Rucker's personal physician, and Rucker.
¶4 In March 2003, Jewel filed a motion for summary judgment and sought frivolous costs. In July 2003, the trial court adjourned the summary judgment motion, telling Rucker that if the summary judgment motion were heard that day, it would be granted. The trial court advised Rucker that he should submit a doctor's affidavit in order to avoid the granting of summary judgment to Jewel. After another change in trial judges in November 2003, the trial court granted summary judgment to Jewel. The trial court determined that Rucker failed to provide any expert medical evidence stating that his illness was a result of food poisoning and was caused by the turkey purchased at Jewel. The trial court granted statutory costs, but not frivolous costs as had been requested by Jewel. It is from that judgment that Rucker appeals.

II. ANALYSIS.
¶5 In an appeal from the entry of summary judgment, this court reviews the record de novo, applying the same standard and following the same methodology required of the trial court under WIS. STAT. § 802.08. See Green Spring Farms v. Kersten, 136 Wis. 2d 304, 315-17, 401 N.W.2d 816 (1987).
¶6 In Preloznik v. City of Madison, 113 Wis. 2d 112, 334 N.W.2d 580 (Ct. App. 1983), we set out the methodology to be used in summary judgment:
Under that methodology, the court, trial or appellate, first examines the pleadings to determine whether claims have been stated and a material factual issue is presented. If the complaint ... states a claim and the pleadings show the existence of factual issues, the court examines the moving party's affidavits for evidentiary facts admissible in evidence or other proof to determine whether that party has made a prima facie case for summary judgment. To make a prima facie case for summary judgment, a moving defendant must show a defense which would defeat the claim. If the moving party has made a prima facie case for summary judgment, the court examines the affidavits submitted by the opposing party for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact, or reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary.
Summary judgment methodology prohibits the trial court from deciding an issue of fact. The court determines only whether a factual issue exists, resolving doubts in that regard against the party moving for summary judgment.
Id. at 116 (citation omitted).
¶7 Additionally, the Wisconsin Supreme Court "has long distinguished between matters of common knowledge and those needing expert testimony to explain," and, accordingly, "has held that expert testimony should be adduced concerning matters involving special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning, study, or experience." Cramer v. Theda Clark Mem'l Hosp., 45 Wis. 2d 147, 150, 172 N.W.2d 427 (1969). In regard to medical issues, for example, the supreme court has "required expert testimony in many cases ... precisely because medical practice demands `special knowledge or skill or experience ....'" Weiss v. United Fire and Cas. Co., 197 Wis. 2d 365, 379, 541 N.W.2d 753 (1995) (citation omitted). Applying these principles to this case, Rucker was obligated to present expert medical testimony as to his medical condition and its cause. He failed to do so.
¶8 The physician who treated Rucker in the emergency room testified in his deposition that he was unconvinced that Rucker was suffering from food poisoning because he lacked symptoms ordinarily associated with the illness. The doctor advised: "Usually [there's] a sudden onset of abdominal pain, usually associated with vomiting and diarrhea. [Rucker] didn't have any vomiting or diarrhea, which doesn't rule it out but makes it less likely." Consequently, the emergency room doctor declined to testify to a reasonable degree of medical certainty that Rucker suffered from food poisoning. The doctor suggested that Rucker's preexisting conditions may have been the cause of the illness.
¶9 Rucker's treating physician was also unable to supply the necessary testimony. Although his doctor originally supported Rucker's claim in two affidavits, the doctor, at his supplemental deposition, after apparently learning for the first time that Rucker consumed a tomato at the same time as the turkey products, changed his opinion. Due to this additional information, the doctor unequivocally testified that he could not state to a reasonable degree of medical certainty that Rucker suffered from food poisoning or that the turkey products caused his illness.
¶10 Rucker argues that the trial court erred in granting summary judgment to Jewel. He claims that the trial court ignored his deposition testimony concerning the issue of eating a tomato with the turkey slicesRucker did not believe the tomato was responsible for his illness. However, while it is true that Rucker was convinced that his illness was food poisoning, that alone is insufficient. Rucker was required to present expert medical evidence demonstrating to a reasonable degree of medical certainty that his illness was a result of food poisoning caused by the consumption of the turkey. He did not do so. Thus, the trial court properly granted summary judgment to Jewel.
¶11 Rucker further argues that the trial court should not have granted summary judgment because a previous trial judge instructed him to obtain an affidavit from his doctor in order to avoid having a summary judgment entered against him, and he complied with the trial court's request. Rucker misconstrues the trial court's remarks.
¶12 At the adjourned summary judgment hearing, the trial court explained to Rucker that his evidence was woefully inadequate and that he needed to obtain either a lawyer's assistance or supplement the record with the required information. The trial court advised:
[I]f you don't have a lawyer or supplement this with a substantial issue of disputed fact that the actual food that you ingested was bad and caused your food poisoning other than your layperson's opinion, you are going to lose this case on a summary judgment motion.[1]
(Footnote added.) The trial court was not guaranteeing that such an affidavit would avoid the granting of summary judgment to Jewel. The trial court was merely pointing out that a layperson's opinion regarding his illness and its cause was insufficient. Moreover, Rucker's submitted affidavits from his doctor were trumped by the treating doctor's later deposition testimony that backed away from his earlier expert opinion concerning Rucker's illness. For the reasons stated, we affirm.
By the Court.  Judgment affirmed.
NOTES
[1] This case bears out the danger of a trial court giving legal advice, no matter how wellintentioned, to a pro se litigant.