NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 3, 2019[*]
Decided April 3, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1098

| | |
|---|---|
| REGINALD S. COLE, JR., *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 15-CV-57 |
| JANSSEN PHARMACEUTICALS, INC., *Defendant-Appellee*. | William C. Griesbach, *Chief Judge*. |

**O R D E R**

Reginald Cole, Jr., a Wisconsin inmate, maintains that the antipsychotic drug Risperdal caused him to suffer various adverse symptoms including gynecomastia (an enlargement of the breast tissue), a swollen and sore chest, and elevated prolactin levels. He brought a products liability action under Wisconsin law against the manufacturer, Janssen Pharmaceuticals, a subsidiary of Johnson & Johnson. After he failed to make proper expert witness disclosures under Federal Rule of Civil Procedure

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

26(a)(2), the district court entered summary judgment for Janssen. Cole's appeal focuses primarily on the court's procedural ruling, and we affirm.

Cole took Risperdal for three short stints between 2007 and 2008, and then took its generic equivalent risperidone (made by many manufacturers including Janssen) for almost a year beginning in December 2012. In the fall of 2013, Cole saw a law firm's advertisement on television stating that persons who took Risperdal and developed gynecomastia might be entitled to compensation. Soon after, Cole began complaining of gynecomastia for the first time to prison medical personnel. A nurse evaluated him but found no evidence of gynecomastia or breast abnormality. Around the same time, Cole's psychiatrist, Dr. Ralph Froelich, discontinued risperidone after Cole described having breast tenderness; Dr. Froelich noted that Cole's prolactin levels were elevated. Two weeks later Cole reported that he was less worried about breast enlargement and that the tenderness was gone; by this time his prolactin levels had returned to normal.

Over a year later Cole sued Janssen for billions of dollars, alleging that Risperdal was defective and had caused him to experience adverse symptoms, including gynecomastia. Discovery ensued, and Cole proceeded to file three successive sets of expert witness disclosures. As expert witnesses, Cole identified various non-treating individuals (including nurses Belinda Schrubbe and Gayle Waltz, complaint examiner Tonya Moon, and Cole's previous attorney Ellen Presby), as well as himself. When informed that his disclosures were inadequate (among other problems, they were not supported by the requisite expert reports, *see* FED. R. CIV. P. 26(a)(2)), Cole took no further steps, and so the court granted Janssen's motion to strike his disclosures, and excluded expert testimony.

The district court ultimately entered summary judgment for Janssen, ruling that Cole had not met his burden of introducing evidence that would allow a reasonable factfinder to conclude that, more likely than not, Risperdal was defective or had caused him any injury. The court pointed out that a products liability claim like Cole's was the sort that required an expert witness, and Cole had none.

On appeal Cole challenges generally the district court's decision to strike his expert witness disclosures, but the district court acted within its discretion when it did so. All expert witness disclosures must be accompanied by a written report prepared and signed by the witness describing the opinion they intend to offer during testimony, FED. R. CIV. P. 26(a)(2)(B), and Cole did not provide any such reports. "[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its

violation of Rule 26(a) was either justified or harmless." *King v. Ford Motor Co.*, 872 F.3d 833, 838 (7th Cir. 2017) (internal quotations omitted). Cole has not argued that his violations were justified, though in his reply brief he baldly asserts that his omissions were harmless. They were not: had the district court overlooked them, Janssen would have been forced to prepare its defense on a critical issue—causation—without knowing what Cole's experts would say or whether it would need to seek expert testimony of its own. *See Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010) ("The purpose of the report is to provide adequate notice of the substance of the expert's forthcoming testimony and to give the opposing party time to prepare for a response.").

Without expert testimony, Cole faced a much steeper challenge of proving that Risperdal caused his symptoms. In Wisconsin, under any theory of product liability, a plaintiff must prove causation. *See Morden v. Continental AG*, 611 N.W.2d 659, 673 (Wis. 2000) (negligence); *Zielinski v. A.P. Green Indus., Inc.*, 661 N.W.2d 491, 496–97 (Wis. Ct. App. 2003) (strict products liability). Wisconsin law does not always require expert testimony in products liability cases—such a determination must be made on a case-by-case basis, *see Weiss v. United Fire & Cas. Co.*, 541 N.W.2d 753, 758 (Wis. 1995)—but expert testimony is required when the matter involved is "not within the realm of the ordinary experience." *Id*. at 757–58 (internal citations omitted); *see also Lees v. Carthage Coll.*, 714 F.3d 516, 522 (7th Cir. 2013). Whether a particular medication caused a particular symptom falls into this category, *see Weiss*, 541 N.W.2d at 757, so Cole's lack of expert testimony justified summary judgment in favor of Janssen.

We have considered Cole's remaining arguments, and none has merit.

AFFIRMED