James A. HEYDEN, Plaintiff-Appellant,

I.W.S., INC., a Wisconsin Corporation, Plaintiff-Co-
Appellant,

v.

SAFECO TITLE INSURANCE COMPANY, a California
Corporation, n/k/a Security Union Title Insurance Co.,
Defendant-Respondent.†

Court of Appeals

*No. 91–2617. Oral argument March 2, 1993.—Decided March
30, 1993.*

(Also reported in 498 N.W.2d 905.)

† Petition to review filed.

On behalf of the plaintiff-appellant and plaintiff-co-appellant, the cause was submitted on the briefs of *Randall L. Nash* and *Annette M. Kingsland* of *O'Neil, Cannon & Hollman, S.C.*, of Milwaukee, and *John H. Correll*, of Milwaukee. Oral argument by *Randall L. Nash.*

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Irving D. Gaines* and *Daniel J. Mages* of *Gaines Law Offices, S.C.*, of Milwaukee. Oral argument by *Irving D. Gaines.*

Before Sullivan, Fine and Schudson, JJ.

FINE, J.  James A. Heyden appeals the trial court's judgment dismissing him from this action. I.W.S., Inc., and Heyden also appeal the trial court's grant of several of the defendant's motions *in limine*.[1] We reverse on all issues.

## I.

This is an insurance "bad faith" action brought against Safeco Title Insurance Company by I.W.S. and Heyden, I.W.S.'s sole shareholder. The operative plead-

---

[1] The judgment entered dismissing Heyden from the action is final as to him. Thus, his appeal is before us as of right. *See* sec. 808.03(1), Stats. We granted leave to I.W.S. to appeal the trial court's non-final orders granting the defendant's motions *in limine. See* sec. 808.03(2), Stats. We consolidated the appeals.

514

ing, an amended complaint filed in May of 1988, alleged that Safeco breached a contract of title insurance and wrongfully refused to pay the insured-against loss.[2] In dismissing Heyden from this action, the trial court held that I.W.S., and not Heyden, owned the property in question, a motel, the rights to which were received by Heyden in a complex exchange-of-property transaction and subsequently transferred by him to I.W.S. The trial court concluded that Heyden therefore lacked the requisite "insurable interest" to maintain a bad-faith claim. Thus, the trial court also barred I.W.S. from offering proof in connection with damages allegedly sustained by Heyden as a result of Safeco's failure to fulfill its contract of title insurance. Additionally, the trial court held that I.W.S. could not recover as damages money I.W.S. contends it would have earned from operating the motel had Safeco fulfilled its obligations, or punitive damages in connection therewith. Finally, the trial court ordered that I.W.S.'s proof at trial not refer to or mention Wis. Adm. Code sec. Ins. 6.11. We analyze these matters in turn.

---

[2] Safeco had denied that it issued the title insurance, but lost on that issue in an earlier breach-of-contract action in which I.W.S. and Heyden recovered on the policy. Initially, the trial court dismissed the bad-faith claim asserted by I.W.S. and Heyden in this action on the ground that the claim was merged into the earlier breach-of-contract action and was therefore barred under *res judicata* principles. On November 20, 1989, this court summarily reversed the judgment of dismissal, holding that the breach-of-contract claim and the bad-faith claim "each arose from a separate transaction" for *res judicata* purposes. *Heyden v. Safeco Title Ins.*, No. 89-0902, unpublished slip op. at 6 (Nov. 20, 1989).

## II.

A. *Heyden as a proper party to this lawsuit.*

The nub of Heyden's and I.W.S.'s complaint against Safeco is that Safeco inadequately investigated their claim and that Safeco "wrongfully, and in breach of the [title] insurance terms and conditions, refused to pay [Heyden and I.W.S.] the benefits to which they were entitled" under the title policy, even though Safeco knew that such refusal was not warranted. This states a claim under Wisconsin law. *See Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 685-686, 271 N.W.2d 368, 374 (1978) (An insured has a tort-claim against his or her insurer for its "failure to exercise good faith in settling the insured's own claim."). Indeed, Safeco does not argue to the contrary.[3] Rather, Safeco contends that Heyden is not a proper party plaintiff because, according to Safeco, as I.W.S.'s sole shareholder he has no insurable interest in the property. As noted, the trial court agreed with this contention.

A trial court's dismissal of a party-plaintiff from a lawsuit will only be sustained if "it appears to a certainty

---

[3] No appellate court in Wisconsin has expressly decided whether the tort of "bad faith" may be based on an insurance company's failure to pay a claim under a title-insurance policy. Courts elsewhere make no distinction between title insurance and other types of insurance insofar as the insurer's obligation resolve an insured's claim in good faith, *see, e.g., White v. Western Title Ins. Co.*, 710 P.2d 309, 316 (Cal. 1985) ("A covenant of good faith and fair dealing is implied in every insurance contract . . . including title insurance.") (citations omitted); *Lipinski v. The Title Ins. Co.*, 655 P.2d 970, 976-978 (Mont. 1982) (holding title company liable for bad faith); neither do we.

that no relief can be granted under any set of facts that plaintiff can prove in support of his allegations." *Morgan v. Pennsylvania General Ins. Co.*, 87 Wis. 2d 723, 732, 275 N.W.2d 660, 664 (1979). Where, as here, a trial court's dismissal is based on matters in addition to the complaint, the dismissal is, in effect, a grant of summary judgment as to the dismissed party, sec. 802.06(2), Stats., and our review is *de novo. Dane County v. McCartney*, 166 Wis. 2d 956, 966, 480 N.W.2d 830, 834-835 (Ct. App. 1992).

The rule in Wisconsin is clear: " 'one must have an insurable interest and a loss before one can collect on a policy of insurance.' " *Stebane Nash Co. v. Campbell-sport Mut. Ins. Co.*, 27 Wis. 2d 112, 118, 133 N.W.2d 737, 742 (1965) (citation omitted); *see* sec. 631.07, Stats. (insurable interest required). Title to property, either legal or equitable, however, is not a prerequisite to having an "insurable interest" in that property. *Id.*, 27 Wis. 2d at 119, 133 N.W.2d at 742. Rather:

> A person has an insurable interest in property when the relationship between him and the property is such that he has a reasonable expectation, based upon a real or legal right, of benefit to be derived from the continued existence of the property and of loss or liability from its destruction.

*Ibid.* (citation omitted). Stated another way: " 'It is sufficient if a person's relationship to the property is such he would reasonably be expected to suffer a loss by the destruction of the property or to derive a benefit from its continued existence.' " *Ibid.* (citation omitted). Thus, "[i]t is generally held that although a stockholder has neither legal nor equitable title to the property of the corporation, he does have an insurable interest in such

property because its destruction would subject him to pecuniary loss." Annotation, *Insurable Interest of Stockholder in Corporation's Property*, 39 A.L.R.2d 723, 724 (1955). Accordingly, Heyden had an insurable interest in the property, and is, therefore, a proper party. The trial court's dismissal of Heyden from this lawsuit is reversed.

B. *Heyden's damages.*

An insured who proves that an insurance company is guilty of tortious bad faith in fulfilling its obligations under an insurance contract may recover both compensatory damages sustained as a result of the tort, and punitive damages. *See Davis v. Allstate Ins. Co.*, 101 Wis. 2d 1, 10, 303 N.W.2d 596, 601 (1981); *Anderson*, 85 Wis. 2d at 697, 271 N.W.2d at 379. The trial court's order granting Safeco's motion *in limine* barring proof of, or reference to, Heyden's claimed panoply of damages purportedly flowing from Safeco's alleged bad faith was predicated on Heyden's dismissal from the action. That order must, therefore, as with the judgment dismissing Heyden's claim, be reversed. We express no view, however, as to what portion of Heyden's claimed damages, if any, would have been recoverable in the breach-of-contract action as consequential damages, *see* 15A Rhodes, COUCH ON INSURANCE 2D (REV ED 1983) § 57:175 (title insurer liable for consequential damages sustained by insured as a result of insurer's breach of contract for title insurance), and which, therefore, may be barred by the *res judicata* principles explicated in our order of November 20, 1989, and what portion of his claimed damages, if any, are recoverable in this tort action for bad faith, *see Poling v. Wisconsin Physicians Service*, 120 Wis. 2d 603, 609-610, 357 N.W.2d 293, 297 (Ct. App. 1984) ("bad

faith" compensatory damages must be "other than those attributable to the breach of contract"). This is a matter that will have to await proof at trial, and, if the evidence is close, a jury verdict, *see James v. Heintz,* 165 Wis. 2d 572, 577 n.4, 478 N.W.2d 31, 34 n.4 (Ct. App. 1991) (trial court should generally reserve a decision on a defendant's motion to dismiss at the end of plaintiff's case to avoid the necessity for a new trial).

### C. *I.W.S.'s damages.*

I.W.S. sought as damages profits it contends it would have earned by operating the motel. The trial court barred I.W.S. from asserting this claim based on its view that seeking damages for lost investment opportunity in this "bad faith" action was inconsistent with I.W.S.'s election to recover the motel's value in the earlier breach-of-contract action.[4] Similarly, Safeco argues

---

[4] The trial court explained:

> I.W.S. was compensated for contract damages under a particular approach in [the breach-of-contract action], and I don't think that they can use a different approach and say I.W.S. would have done something different under the contract or sought something different and, therefore, our bad faith damages change. We can, therefore, maintain it because that's the only way that you can maintain this claim for compensatory damages in bad faith is to say that I.W.S. would have claimed something — would have done something different than what they did in the [breach-of-contract] action.

It appears that the court also based its ruling on its belief that *res judicata* principles barred I.W.S.'s lost-income claim:

> But this is the reason — why the law doesn't like claims to be brought up in series. They [*sic*] like them to be brought up all at once. This is part of the operation for the document [*sic*] of res judicata, although it's been found not to apply in this case. I submit it's more than just a doctrine of repose, it also allows parties to litigate in one shot, at one time, all of the claims they have against each other.

that the "election of remedies" doctrine bars I.W.S. from seeking consequential damages because the prior breach-of-contract action was based on a rescission theory in connection with the exchange-of-property agreement. As we have already noted, however, an insured may recover compensatory damages sustained as a consequence of the insurance company's tort of "bad faith," and these damages are of a different species than those that may be recovered for breach of the insurance contract. Thus, contrary to the trial court's implication to the contrary, as set out in note 4, *supra*, our November 20, 1989, order, which is the law of this case, made it clear that I.W.S.'s "bad faith" action against Safeco is not barred by the earlier breach-of-contract action. I.W.S.'s "bad faith" action against Safeco is also not barred by the "election of remedies" doctrine: neither rescission of the exchange-of-property agreement nor recovery of compensatory damages in the breach-of-contract action is inconsistent with recovery of damages in this "bad faith" tort action, and would not result in a double recovery for the same wrong. *See Bank of Commerce v. Paine, Webber, Jackson & Curtis*, 39 Wis. 2d 30, 38-39, 158 N.W.2d 350, 353-354 (1968) ("election of remedies" doctrine applies only when there is "a true inconsistency" in the remedies sought " 'either because one remedy must allege as fact what the other denies, or because the theory of one must necessarily be repugnant to the other' " (citation omitted)). As with Heyden's claim for damages discussed in part B, *supra*, we express no view as to what portion, if any, of I.W.S.'s damages

---

That's why res judicata applies not only to claims that were litigated, but claims that could have been litigated but weren't. It's to prevent in part situations such as this arising where we have to look at what happened in another case to determine what can and can't be done in this case? [*sic*]

claimed in connection with the motel investment are damages that would have been recoverable in the breach-of-contract action, and which, therefore, may be barred by *res judicata* principles, and what portion of those damages, if any, are recoverable in this tort action for bad faith. This is a matter that, too, must await proof at trial.

### D. *Wis. Adm. Code sec. Ins. 6.11.*

The final issue on this appeal is whether the trial court properly granted Safeco's motion *in limine* to bar all reference in the trial to Wis. Adm. Code sec. Ins. 6.11, a lengthy provision that, by its terms, "defin[es] certain claim adjustment practices which are considered to be unfair methods and practices in the business of insurance." Wis. Adm. Code sec. Ins. 6.11(1). The trial court gave two reasons in support of its decision. First, the trial court ruled that it would instruct the jury in conformity the pattern jury instruction on insurance company "bad faith," Wis J I—Civil 2761, and that this obviated the need for either the litigants or any expert witness to mention section 6.11. Second, the trial court noted that section 6.11 does not create a private right of action.

A trial court's decision to admit or exclude evidence is a discretionary determination and will not be upset on appeal if it has "a reasonable basis" and was made " 'in accordance with accepted legal standards and in accordance with the facts of record.' " *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983) (citation omitted). The trial court's decision to exclude all mention of section 6.11 is contrary to the applicable law.

Instruction in accord with Wis J I—Civil 2761 does not obviate the need for evidence of the standards set out in the administrative code. A trial court's jury instructions must "fully and fairly inform[ ] the jury of the rules and principles of law applicable to the particular case." *D.L. v. Huebner*, 110 Wis. 2d 581, 624, 329 N.W.2d 890, 909 (1983). A jury instruction on a particular issue should not be given unless that issue is fairly raised by the evidence. *Id.*, 110 Wis. 2d at 624, 329 N.W.2d at 910. Whether an insurance company has acted in bad faith is measured against what "a reasonable insurer" would have done "under the particular facts and circumstances." *Poling*, 120 Wis. 2d at 608, 357 N.W.2d at 297. This standard is a matter beyond the ken of the ordinary juror and, therefore, requires expert testimony. *See Kujawski v. Arbor View Health Care Center*, 139 Wis. 2d 455, 463, 407 N.W.2d 249, 252 (1987). Thus, an expert's testimony is a predicate to instructing the jury in conformity with Wis J I—Civil 2761. Absent extraordinary circumstances that call for the imposition of Rule 904.03, Stats. (exclusion of relevant evidence), a party calling an expert witness is entitled to have that witness explain the bases for his or her opinion; matters upon which an expert relies in formulating an opinion may be disclosed to the jury "as a basis for the opinion" even though Rule 907.03, Stats., does not permit those matters to be received as substantive evidence. *See Kolpin v. Pioneer Power & Light Co.*, 162 Wis. 2d 1, 37, 469 N.W.2d 595, 609-610 (1991). Thus, at the very least, the standards set out in section 6.11 were "admissible" for that purpose. As we explain below, they were also admissible as substantive evidence.

The trial court correctly noted that Wis. Adm. Code sec. Ins. 6.11 does not create a private right of action. *Kranzush v. Badger State Mut. Casualty Co.*, 103 Wis. 2d 56, 79-81, 307 N.W.2d 256, 268-269 (1981). This does not, however, end our analysis.

Generally, "violation of a duty imposed by either a safety statute or regulation is negligence *per se* if 'the harm inflicted was the type [that] the statute [or regulation] was designed to prevent and [if] the person injured was within the class of persons sought to be protected.' " *Peck v. Meda-Care Ambulance Corp.*, 156 Wis. 2d 662, 670, 457 N.W.2d 538, 542 (Ct. App. 1990) (citation omitted) (brackets in original). Courts will not, however, apply statutory standards of conduct "to impose any duty beyond that imposed by the common law unless such statute clearly and beyond any reasonable doubt expresses such a purpose by language that is clear, unambiguous, and peremptory." *Grube v. Moths,* 56 Wis. 2d 424, 437, 202 N.W.2d 261, 268 (1972).

As we have seen, Wis. Adm. Code sec. Ins. 6.11 has, as its stated purpose, to "defin[e] certain claim adjustment practices which are considered to be unfair methods and practices in the business of insurance" so as "to promote the fair and equitable treatment of policyholders, claimants and insurers." Wis. Adm. Code sec. Ins. 6.11(1). Thus, Heyden and I.W.S. fall squarely within the class protected by section 6.11, and their allegations claim injuries that section 6.11 was designed to prevent.

The regulation lists thirteen examples of what it terms "unfair claim settlement practices," which, "if committed by any person without just cause and performed with such frequency as to indicate general busi-

ness practice, shall constitute unfair methods and practices in the business of insurance." Wis. Adm. Code sec. Ins. 6.11(3)(a). The regulation also lists three acts that "constitute unfair methods and practices in the business of insurance." Wis. Adm. Code sec. Ins. 6.11(3)(b). These standards of conduct are "interpretive aid[s] to the application [by the commissioner of insurance] of the commissioner's enforcement powers," *Kranzush*, 103 Wis. 2d at 81, 307 N.W.2d at 269, and their violation may result in the revocation of "license to transact insurance in this state." Wis. Adm. Code sec. Ins. 6.11(5). They are, however, little more than a reification of some of the  elements that comprise the general common-law duty of good faith that an insurer owes its insured. *See Anderson*, 85 Wis. 2d at 688-689, 271 N.W.2d at 375 (" 'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.' " (citation omitted)).[5] Their adoption by the commissioner of insurance, *see* sec.

[5] Wis. Adm. Code sec. Ins. 6.11(3) provides:

UNFAIR CLAIM SETTLEMENT PRACTICES. (a) Any of the following acts, if committed by any person without just cause and performed with such frequency as to indicate general business practice, shall constitute unfair methods and practices in the business of insurance:

1. Failure to promptly acknowledge pertinent communications with respect to claims arising under insurance policies.

2. Failure to initiate and conclude a claims investigation with all reasonable dispatch.

3. Failure to promptly provide necessary claims forms, instructions and reasonable assistance to insureds and claimants under its insurance policies.

4. Failure to attempt in good faith to effectuate fair and equitable settlement of claims submitted in which liability has become reasonably clear.

5. Failure upon request of a claimant, to promptly provide a reasonable explanation of the basis in the policy contract or applicable law for denial of a claim or for the offer of a compromise settlement.

601.41(3), Stats. (commissioner has rule-making authority under section 227.11(2), Stats.), reflects those aspects of the insurer-insured relationship deemed by this state to be significant to, *inter alia*, the "equitable treatment of policyholders." Wis. Adm. Code sec. Ins. 6.11(1). The fact of their adoption, Safeco's presumed awareness of their provisions, and the specificity of their commands, all have a bearing on whether Safeco acted in

6. Knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages involved.

7. Failure to affirm or deny coverage of claims within a reasonable time after proof of loss has been completed.

8. Failure to settle a claim under one portion of the policy coverage in order to influence a settlement under another portion of the policy coverage.

9. Except as may be otherwise provided in the policy contract, the failure to offer settlement under applicable first party coverage on the basis that responsibility for payment should be assumed by other persons or insurers.

10. Compelling insureds and claimants to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them.

11. Refusing payment of claims solely on the basis of the insured's request to do so without making an independent evaluation of the insured's liability based upon all available information.

12. Failure, where appropriate, to make use of arbitration procedures authorized or permitted under any insurance policy.

13. Adopting or making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration.

(b) Any of the following acts committed by any person shall constitute unfair methods and practices in the business of insurance:

1. Knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages involved.

2. Failure to make provision for adequate claims handling personnel, systems and procedures to effectively service claims in this state incurred under insurance coverage issued or delivered in this state.

3. Failure to adopt reasonable standards for investigation of claims arising under its insurance policies.

good faith and, if not, the extent to which punitive damages, if any, are warranted. Section 6.11 is therefore relevant, *see* Rule 904.01, Stats. (evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"), and, accordingly, admissible as substantive evidence, *see* Rule 904.02, Stats. (relevant evidence is generally admissible).

## III.

The judgment, order, and supplemental order of the trial court are reversed, and the cause is remanded for further proceedings consistent with this opinion.

*By the Court.*—Judgment and orders reversed and cause remanded.