**BANKRUPTCY ESTATE OF LAKE GENEVA SUGAR SHACK, INC., and Bankruptcy Estate of Dana Montana, Plaintiffs,**

v.

**GENERAL STAR INDEMNITY CO., Defendant.**

No. 91–C–0163.

United States District Court, E.D. Wisconsin.

Jan. 7, 1999.

Christopher T. Hale, Milwaukee, WI, for Plaintiff.

John B. McCabe, Chicago, IL, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lake Geneva Sugar Shack, Inc. ("Sugar Shack") is a Wisconsin corporation that operates the Sugar Shack nightclub in Lake Geneva, Wisconsin. Dana Montana was the sole shareholder and principal officer of the corporation.[1] Defendant General Star Indemnity Co. ("Genstar") is a Connecticut based insurance company. In July 1989 Montana purchased an insurance policy from Genstar covering the Sugar Shack nightclub. The policy included coverage for loss due to fire.

On February 16, 1990, there was a serious fire at the nightclub. Genstar hired Frontier Adjusters, an independent adjusting firm, to investigate the loss. Mike McNichols of Frontier was the principal investigator.

Genstar denied Sugar Shack's and Montana's claim under the policy. Genstar cited several reasons for the denial including its conclusion that Montana was involved in starting the fire and had made a number of serious misrepresentations regarding the matter.

On February 5, 1991, Genstar filed suit in Walworth County Circuit Court against Sugar Shack and Montana seeking a declaratory judgment dissolving the insurance agreement. In its complaint Genstar accused Montana of fraud, breach of the policy agreement and other wrongs. Sugar Shack and Montana filed an answer to the complaint but asserted no counterclaims.

On February 15, 1991, Sugar Shack and Montana filed this diversity action against Genstar, several insurance agencies and an insurance agency employee. Sugar Shack and Montana asserted a claim of bad faith against Genstar and alleged that Genstar was vicariously liable for defamation and tortious interference with contract based on statements allegedly made by McNichols that Montana was an arsonist. Sugar Shack and Montana also filed suit in Milwaukee County Circuit Court against Frontier and McNichols alleging claims of defamation and tortious interference with contract, similar to those alleged against Genstar in this lawsuit.

Genstar soon afterward moved this court for a stay of proceedings pending the outcome of the case in Walworth County. On September 16, 1991, Judge Robert W. Warren exercised his discretion pursuant to *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and granted the stay based on his conclusion that the federal proceeding paralleled the state proceeding, the stay was justified to avoid piecemeal litigation, and the state court could adequately protect plaintiff's rights. During the course

---

1. Since the filing of this lawsuit, both Sugar Shack and Montana declared bankruptcy. Trustees were appointed for their bankruptcy estates and have been substituted as parties in this case.

of a twelve page opinion Judge Warren observed:

> If the Court stays the action, it will be able to rely on the state court's findings of fact instead of eliciting the facts contemporaneously alongside the state court in two separate proceedings. Any state court finding will reduce the amount of litigation in a parallel federal matter. If Montana prevails, she will not only be able to have her day in court, she will be leveraged into a better bargaining position if she chooses to settle out of court. If General Star prevails, Montana's claim will be mooted without both parties having to go through another expensive, time consuming procedure.

(Decision and Order of 9/16/91 at 8.)

On January 20, 1992, the Walworth County Court granted a motion by Sugar Shack and Montana to amend their pleadings to assert counterclaims against Genstar. Sugar Shack and Montana then filed a counterclaim against Genstar for breach of the insurance policy, defamation and tortious interference with contract, but not for bad faith.

A pretrial conference was held before the trial judge in Walworth County on January 11, 1994, at which time counsel for Sugar Shack and Montana stated that he was considering adding a counterclaim for bad faith against Genstar. The parties and the court discussed this possibility, and the court indicated that it would entertain Sugar Shack's and Montana's motion to add such a claim. However, Sugar Shack and Montana never made the motion. The full colloquy concerning the bad faith issue was as follows:

> MR. HALE: The one thing on the Scheduling Order that I am contemplating, your Honor, is I'm not sure yet. It's something I have discussed with Mr. Baxter. He tells me I'm precluded from doing this by the Statute of Limitations; other things, I am considering a Bad Faith allegation against the insurance company. The basis for that is becoming more clear. The expert witness who Mr. Baxter was attempting to have—one of the reasons for the adjournment was this expert who couldn't be here the first week of trial and apparently will be his key witness, that Miss Montana was in fact the arsonist because of a financial motive, was never retained

by the insurance company prior to their determination of denying her coverage on one basis of that was that she was the arsonist. And if in fact they had not made an adequate investigation and had not— had not made a reasonable enough investigation before denying coverage in that regard, there may be a Bad Faith claim.

> Now there's all sorts of issues attended to that Mr. Baxter would love to apprise the Court of having to do with the prior counsel on this case may have stipulated that right away, the Statute of Limitations may bar it, whether any bad faith claim would relate back to the time of the Answer and Counter Claim. There's a two-year from the time of discovery to raise the Bad Faith claim. But, in any event, that would be one issue and I think it is a major issue and would obviously require extensive briefing. So maybe this would be appropriate time to put together a briefing schedule on that regarding the issue of Bad Faith.

> MR. BAXTER: Your Honor—

> THE COURT: Well, first of all, Bad Faith wouldn't be an issue in this case, would it? It would come after a decision is rendered in the case it would seem to me. In other words, you've got a new lawsuit. Question arises whether his objection to the statute or not would survive—that would—I can't see how that issue would come up here until it was a judgment in this case.

> MR. HALE: I think the law is, your Honor, and Mr. Baxter will correct me, that when facts giving rise to evidence that there was not a reasonable basis at the time of the denial of coverage that at that point in time your cause of action for Bad Faith accrues and you have two years to bring it and I think the case law has Bad Faith claims in trials like this where they are tried together with the arson case itself.

> THE COURT: You haven't brought it, however, as your case, have you?

> MR. HALE: Have not yet.

> MR. BAXTER: And just for the Court, I'll just address it ever so briefly, your Honor. Mr. Hale touched on just a couple of points. One, this—what is in front of the

Court today, at one time was venued in three separate courts. There were lawsuits pending in the Circuit Court from Milwaukee County, in the Federal Court for the Eastern District of Wisconsin, as well as the Circuit Court for Walworth County.

A motion was brought in front of the Federal Court which had the same guts of what is now in front of the Court today was in front of the Eastern District and we moved the Federal Court to stay the Federal Court action pending the outcome of the Walworth County action. Federal Court granted our motion. Counsel prior to Mr. Hale then wanted to consolidate all cases in Walworth County and came to me and said, Mr. Baxter, will you agree to that and I said well, if you will agree to drop whatever Bad Faith claim you have. He said I don't have a Bad Faith claim. I agreed to drop it. Let's get these things all in front of Walworth County. And that's a matter of stipulation on the record between Mr. Hale's predecessor and myself.

Secondly, the Statute of Limitations for Bad Faith is two years. This fire was more than—obviously more than two years ago. Third, if that isn't enough and if Bad Faith is in fact going to be in the case—and I certainly wouldn't predispose the Court's decision on that—then we're going to need another week of trial to address the Bad Faith issues.

And, last but not least, if Mr. Hale is allowed to put Bad Faith into the case, what will follow in short order is my motion to then bifurcate the Bad Faith issues from the case in chief. And as the Court, I think properly observed, just shooting from the hip that I presume that you were, sir; that let's try the principal case before we try the Bad Faith case. And that would be my next move after that.

So I'm all in favor of Mr. Hale having his date and, you know, be happy to brief the issue and address it to the Court—address my arguments to the Court and to the Court's discretion. But just—Those are—I don't want to let Mr. Hale's remarks just sit on the record unchallenged. It would be a much more complicated case if that were to happen.

MR. HALE: And just for the record, because of my reading of the case law, I think I am duty bound to bring any such claim now or be barred by it.

THE COURT: You might—You might have a duty to your client. You might have to look at it from your point. You're protecting your backside here but I—Well, I guess there would be nothing wrong with the exception of it creating a lot more work or consideration in this case before we get to trial as far as briefing it is concerned. But I still don't believe that the facts brought out to a jury in this case regarding the basic or main issues that you've started on, no matter—arson and all the rest of the, that anything can be accomplished with the same jury by then intermingling another issue such as Bad Faith on the part of the insurance company. I certainly would hesitate to confuse the jury under any circumstances or to give them something that might cause them to become confused with what issues they do have before them.

In other words, that's what I meant by after this basic issue has been resolved is usually the time a Bad Faith action starts although I didn't—I don't intend to say—and I know that it's possible that those same issues could be tried—regarding Bad Faith could be tried in the same trial, but I certainly didn't expect it to be here in this case.

In any case, I would look at it from the viewpoint that we do clear up the basic issues in this case on arson before any Bad Faith issue matter would be brought to the attention of the same jury.

MR. HALE: And understanding that, I would just request that I be allowed to bring a motion at least to amend the Complaint—amend the Counterclaim—the Third–Party Counterclaim for the Court subject to all of the arguments.

THE COURT: I'm not going to deny you the right to do that and whatever comes of it, Mr. Baxter will be prepared to argue from his own side.

Transcript of 1/11/94 at 25–30, *General Star Indem. Co. v. Bankruptcy Estate of Lake*

*Geneva Sugar Shack, Inc.*, No. 91–CV–076 (Walworth County Cir. Ct.1994).

In early 1994 Judge Warren asked the parties for an update on the status of the state court action. In response Genstar contended that the federal action should be dismissed because "all matters that were initially embraced in the federal court action have been embraced in the state court action." (Letter from Baxter of 2/1/94.) Montana objected to this contention and argued as follows:

> In no event, should this matter be dismissed as the Walworth County action does not contain the same causes of action as this case.... A dismissal of this action would seriously prejudice the plaintiffs' rights because it would create statute of limitations problems for the causes of action plead in this case that were not contained in the Walworth County case. Specifically, the plaintiffs' Complaint contains a cause of action for bad faith which has never been alleged in the Walworth County case.

(Letter from Hale of 3/1/94.)

On June 27, 1994, Judge Warren entered the following order:

> ... the Court hereby ORDERS that, because there appears to be no reason at this time to maintain an open file, the Clerk of Courts instruct the Administrative Office to close this case for statistical purposes. Nothing herein should be considered a dismissal or disposition of this matter, however, and either party may reopen the case at any time by advising the court and opposing counsel in writing that further proceedings are desired.

(Order of 6/27/94 at 1–2.)

In September 1994, Sugar Shack and Montana filed for bankruptcy in the Bankruptcy Court in the Eastern District of Wisconsin. The effect of filing of bankruptcy was to automatically stay the action pending in Walworth County. Subsequently, Genstar asked the bankruptcy court to lift the automatic stay so that the Walworth County case could go forward. Over the opposition of Sugar Shack and Montana, the bankruptcy court granted the motion on March 9, 1995.

Plaintiffs appealed the decision lifting the automatic stay to the district court. They argued that because "the trustee is unable to pursue all of its claims in that jurisdiction [i.e., Walworth County] ... the action would be tried in Walworth County and then a whole new trial would have to be held in the Eastern District to resolve the trustees' remaining claims [i.e., the bad faith claim]." Objection to Motion for Relief from Automatic Stay at 3, *General Star Indem. Co. v. Montana (In re Montana)*, No. 94–25001–DEI (Bankr.E.D.Wis.1995). In response Genstar argued that plaintiffs' bankruptcy filings and their opposition to lifting the automatic stay were attempts by plaintiffs to avoid a trial in Walworth County which plaintiffs regarded as an unfavorable forum. Genstar's brief included the following statements:

> As set forth in the Decision ... Judge Warren realized the state law nature of those claims, and stayed further proceedings in the Federal Court Action until conclusion of the Walworth County Action. At that time, Appellants could proceed with the Federal Court Action and adjudicate their bad faith claim.
>
> \* \* \* \* \* \*
>
> Nothing has changed. The existence of creditors appearing after the date of Judge Warren's Decision and Order does not change anything. The Walworth County Action is the best forum for resolution of all claims other than the bad faith claim and the bad faith claim should be litigated in the Federal Court Action after completion of the Walworth County Action.

Brief for Appellee at 5, 7, *Dubis v. General Star Indem. Co.*, No. 95–C–440 (E.D.Wis. 1995).

On January 29, 1996, Judge John W. Reynolds affirmed the bankruptcy court's decision, thereby allowing the Walworth County case to go forward. In his opinion Judge Reynolds observed:

> Because the debtors raised the bad faith claim in a separate, federal action, the Walworth County Court will not decide the bad faith claim and the trustees will have to spend extra resources litigating the bad faith claims in a separate forum, unnecessarily depleting the debtor's estate. The trustee's concerns sound worse than they

are. First, Wisconsin courts have liberal rules for amending answers, Wis. Stat. § 802.09, and the trustees may be able to plead the bad faith counterclaim rather than suffer the consequences of the debtors' litigation decisions. Even if the Wisconsin court denies a motion to amend, the declaratory judgment action, by determining coverage, will resolve most of the bad faith claims. If General wins in state court, obviously there is no bad faith claim. If General loses, issue preclusion will prevent General from relitigating most issues in the bad faith claim. The trustees would have a stronger case if claim preclusion and a final resolution of the state case would bar the federal action, thereby denying the trustees the right to ever raise the bad faith claim. Because the trustees have not raised this issue, the court assumes it is not a problem.

*Dubis v. General Star Indem. Co.*, No. 95–C–440, slip op. at 4–5 (E.D.Wis. Jan. 29, 1996).

Prior to trial in Walworth County, Sugar Shack and Montana released their claims against Genstar for defamation and tortious interference with contract. The remaining claims were tried to a jury in March 1996. The jury decided that Montana was not involved in starting the fire but concluded that she had concealed or misrepresented material facts concerning the cause of the fire and her business interruption claim. The jury determined that Genstar breached the insurance contract and owed Montana approximately $260,000 in compensatory damages and over $3 million in consequential damages.

On motions after verdict, the judge rejected the jury's conclusion that Montana concealed or misrepresented the cause of the fire. He upheld the compensatory damages award but struck the award of consequential damages.

Sugar Shack and Montana appealed, and Genstar cross-appealed. On November 12, 1997, the Wisconsin Court of Appeals upheld the trial judge's holding rejecting the jury's finding of concealment or misrepresentation on the part of Montana and affirmed the award of compensatory damages and the trial court's striking of consequential damages. The Wisconsin Supreme Court denied Genstar's petition for review and Sugar Shack's and Montana's petition for cross review. The trial court then entered judgment in favor of Sugar Shack and Montana for compensatory damages of $259,100 plus interest.

On January 29, 1998, plaintiffs here sought to reopen the present case. The case was randomly reassigned to me. I reopened it and plaintiffs filed an amended complaint asserting a single claim of bad faith against Genstar concerning its handling of plaintiffs' insurance claim. All claims against other defendants were dropped.

On March 8, 1998, I *sua sponte* raised the question of whether the bad faith claim was barred by the doctrine of claim preclusion. *See Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir.1996). The parties briefed the issue, and Genstar moved for summary judgment arguing that the Walworth County judgment bars plaintiffs' bad faith claim. I now address Genstar's motion.

## II. SUMMARY JUDGMENT STANDARD AND STATEMENT OF APPLICABLE LAW

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file together with any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In this case, the parties agree that there are no genuine issues of material fact relating to the issue of claim preclusion, and that summary judgment is an appropriate vehicle for resolving the issue.

■ As a general principle, the doctrine of claim preclusion requires litigants to join in a single suit all legal and remedial theories that concern a single transaction. *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1034 (7th Cir.1997). Application of the doctrine prevents splitting a single cause of action and using several theories of recovery as the basis for separate lawsuits. *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir.1988). The doctrine ensures the finality of judgments in order to encourage reliance on judicial decisions and prevent repetitive or

vexatious litigation. *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 913 (7th Cir.1993).

■ Under the Full Faith and Credit Clause of the United States Constitution[2] and its implementing statute, 28 U.S.C. § 1738, a federal court must afford a state court judgment "the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Therefore, Wisconsin law governs assessing the claim preclusive effect of the Walworth County judgment. *Starzenski v. City of Elkhart*, 87 F.3d 872, 877 (7th Cir.1996).

### III. ANALYSIS

■ Wisconsin's interpretation of claim preclusion is virtually identical to the Seventh Circuit's interpretation. *Leaf v. Supreme Court*, 979 F.2d 589, 600 (7th Cir. 1992). In Wisconsin, "a final judgment is conclusive in all subsequent actions between the same parties or their privies as to all matters which were litigated or which might have been litigated in former proceedings." *Northern States Power Co. v. Bugher*, 189 Wis.2d 541, 550, 525 N.W.2d 723 (1995). The question of whether claim preclusion applies to a given set of facts is a question of law. *Id.* at 551, 525 N.W.2d 723. The following factors must be present in order for prior proceedings to bar a subsequent claim: (1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and (3) a final judgment on the merits in a court of competent jurisdiction. *Id.* In this case, the parties agree that factors (1) and (3) are present but disagree as to whether the causes of action in the two suits are the same.

■ Wisconsin follows a transaction approach to determine whether two suits involve the same cause of action. *Id.* at 553, 525 N.W.2d 723; *DePratt v. West Bend Mutual Ins. Co.*, 113 Wis.2d 306, 311–12, 334 N.W.2d 883 (1983). In *Northern States Power*, the Wisconsin Supreme Court quoted the Restatement (Second) of Judgments § 24 (1982) to explain the transaction approach:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ..., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understandings or usage.

*Northern States Power*, 189 Wis.2d at 553–54, 525 N.W.2d 723 (ellipsis in original). In both *DePratt* and *Northern States Power* the Wisconsin Supreme Court also referenced the comment to section 24 of the Restatement:

" 'The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories of rights. The transaction is the basis of the litigative unit or entity which may not be split.' "

*Id.* at 554, 525 N.W.2d 723 (quoting *DePratt*, 113 Wis.2d at 311, 334 N.W.2d 883, in turn quoting Restatement (Second) of Judgments § 24, cmt. a (1982)).

### A. Wisconsin Counterclaim Law

■ Plaintiffs argue that I need not undertake a transaction analysis because they were defendants in the Walworth County case and, pursuant to Wisconsin's permissive

---

**2.** "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const. art. IV, § 1.

counterclaim statute, had the option of bringing their bad faith claim as a counterclaim either in that case or as a separate action. *See* Wis. Stat. § 802.07(1). However, here, Sugar Shack and Montana brought counterclaims against Genstar in the Walworth County action for breach of contract, defamation and tortious interference with contract. They did not, however, counterclaim for bad faith in the Walworth County case, but instead brought a separate lawsuit in federal court alleging bad faith. Section 802.07(1) is silent on whether a defendant may bring some of its claims as counterclaims and others as separate lawsuits. Nor have I found a Wisconsin case that determines whether counterclaim-splitting is permissible.

I decide the question as I believe the Wisconsin Supreme Court would if squarely presented with the issue. *L.S. Heath & Son, Inc. v. AT&T Info. Systems*, 9 F.3d 561, 574 (7th Cir.1993). Because the Wisconsin Supreme Court has relied on the Restatement (Second) of Judgments to resolve related questions, I look to it for guidance. Section 21(1) of the Restatement provides that "where the defendant interposes a counterclaim on which judgment is rendered in his favor the rules of merger are applicable to the claim stated in the counterclaim ...." The comment to section 21 notes that "a defendant who interposes a counterclaim is, in substance, a plaintiff as far as the counterclaim is concerned," and the rule of merger therefore applies to such claims. *Id.* The rule of merger is that a party who obtains a judgment cannot bring a separate action on any part of the original claim because the original claim is "merged" into the judgment. Restatement (Second) of Judgments § 18(1) & § 18(1) cmt. a; *see also Threshermen's Mut. Ins. Co. v. Wallingford Mut. Ins. Co.*, 26 F.3d 776 (7th Cir.1994) (applying Wisconsin law and holding that plaintiff's claim in federal court was barred by *res judicata* where it might have been brought as a cross-claim in a prior state court action).

■ Based on the foregoing principles I believe that the Wisconsin Supreme Court would hold that when a defendant obtains a judgment on a counterclaim, the judgment extinguishes the defendant's right to recover on other counterclaims arising out of the same transaction. That plaintiffs here were

defendants in the Walworth County action does not immunize them from the rule against claim-splitting or from the doctrine of claim preclusion. As defendants bringing counterclaims, they are treated as plaintiffs. Having brought some counterclaims in Walworth County, they were required to join in that forum all of their other claims arising from the same transaction or risk having their untested claims precluded.

**B. Identity of Breach of Contract and Bad Faith Causes of Action**

■ Therefore, I must determine whether plaintiffs' breach of contract and bad faith claims arose from the same transaction. Plaintiffs clearly could have brought their bad faith claim as a counterclaim in Walworth County because Wisconsin recognizes the tort of bad faith. *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978). They argue, however, that they were not required to do so because under Wisconsin law breach of contract and insurance bad faith claims do not arise from the same transaction. Plaintiffs cite *Heyden v. Safeco Title Insurance Co.*, 175 Wis.2d 508, 498 N.W.2d 905 (Ct.App.1993), in support of this contention. *Heyden* includes the following footnote:

> Safeco had denied that it issued the title insurance, but lost on that issue in an earlier breach-of-contract action in which I.W.S. and Heyden recovered on the policy. Initially, the trial court dismissed the bad-faith claim asserted by I.W.S. and Heyden in this action on the ground that the claim was merged into the earlier breach-of-contract action and was therefore barred under *res judicata* principles. On November 29, 1989, this court summarily reversed the judgment of dismissal, holding that the breach-of-contract claim and the bad-faith claim "each arose from a separate transaction" for *res judicata* purposes. *Heyden v. Safeco Title Ins. Co.*, No. 89–0902, unpublished slip op. at 6 (Nov. 20, 1989).

*Heyden*, 175 Wis.2d at 515 n. 1, 498 N.W.2d 905. Even though referenced by a published decision, any holding that breach of contract and bad faith claims arise out of separate transactions is actually found in an unpub-

lished decision. Wisconsin Statute § 809.23(3) provides that "an unpublished opinion is of no precedential value." Therefore, *Heyden* cannot bear on the outcome of the present case.

Plaintiffs also rely on *Davis v. American Family Mutual Insurance Co.*, 212 Wis.2d 382, 569 N.W.2d 64 (Ct.App.1997). *Davis*, however, does not hold that breach of contract and bad faith claims arise from separate transactions. In *Davis* a plaintiff brought a claim on an uninsured motorist insurance policy in a Minnesota court and subsequently brought a bad faith claim in a Wisconsin court. The Wisconsin judge advised the plaintiff to first bring the claim in Minnesota but that if it failed (Minnesota does not recognize the tort of bad faith), he could refile in Wisconsin. The Wisconsin Court of Appeals held that the Wisconsin suit was not barred by claim preclusion, *Davis*, 212 Wis.2d at 389, 569 N.W.2d 64, but the case did not address the issue of whether the contract and bad faith claims arose out of the same transaction.

■ I thus go back to the transaction analysis adopted by the Wisconsin Supreme Court in *Northern States Power* and *De-Pratt*. The analysis requires a pragmatic approach giving weight to factors set forth in the Restatement, which again are: (1) whether the facts underlying the breach of contract and bad faith claims are related in time, space, origin or motivation, i.e., whether they arise out of the same transaction, seek redress for essentially the same basic wrong, and rest on the same or a substantially similar factual basis; (2) whether the facts underlying the contract and bad faith claims form a convenient trial unit; and (3) whether treating the underlying facts as a trial unit conforms to the parties' expectations. Restatement (Second) of Judgments § 24 cmt. b; *Porn v. National Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir.1996).[3]

### 1. Relationship of the Facts Underlying Each Claim

The facts underlying the breach of contract and bad faith claims are closely related. Both claims arise from Genstar's denial of insurance coverage to Sugar Shack and Montana for various losses resulting from a fire. Both claims seek redress for Genstar's refusal to pay the insurance claim. Thus, the claims arise from the same occurrence and seek redress for the same or similar wrongs. That the bad faith claim is based on an *unreasonable* refusal to pay the insurance claim does not alter the underlying similarity of the claims.

Plaintiffs contend that the breach of contract claim focuses on whether Montana's actions voided coverage and the bad faith claim rests on Genstar's allegedly inadequate investigation and evaluation of the claim. Plaintiffs' focus is too narrow. Both claims require proof of the terms of the insurance policy, Genstar's denial of coverage, Montana's involvement or lack thereof in the fire, the effects of the fire and the nature of Genstar's investigation and analysis of the insurance claim. In the breach of contract suit the proof would relate to the question of whether coverage was properly voided, and in the bad faith suit to whether denial of the claim was reasonable. Thus, proof of the two claims would require much the same evidence, except that in the bad faith lawsuit plaintiffs would have to show that Genstar knew of or recklessly disregarded the absence of a reasonable basis for denying coverage. *Anderson*, 85 Wis.2d at 692, 271 N.W.2d 368.

Thus, the facts underlying both claims are closely related if not inextricably linked. As the court stated in *Porn*:

"Admittedly, each legal theory relies more heavily on some of the underlying facts than others .... However, the Restatement makes clear that merely because two claims depend on different shadings of the facts or emphasize different elements of the facts, we should not color our perception of the transaction underlying them, creating multiple transactions where only one transaction exists".

*Porn*, 93 F.3d at 35.

### 2. Trial Convenience

The second Restatement factor to consider is whether the contract and bad faith claims

---

**3.** *Porn* includes a collection of state court cases on the issue, a majority of which conclude that breach of contract and bad faith claims arise from the same transaction. *See Porn*, 93 F.3d at 35 n. 3.

form a convenient trial unit. This factor is aimed at ensuring that judicial resources are properly utilized. Generally, it means that where the evidence required to prove the two claims is similar, the second action should be precluded. Restatement (Second) of Judgments § 24 cmt. b; *Porn,* 93 F.3d at 36. As we have seen, the two claims require similar proof. It would have been convenient and efficient for the Walworth County court to have heard both claims. In fact, plaintiffs' counsel acknowledged in the colloquy before Judge Morton in Walworth County that "the case law has Bad Faith claims in trials like this where they are tried together with the arson case itself." Transcript of 1/11/94, *General Star Indem. Co. v. Bankruptcy Estate of Lake Geneva Sugar Shack, Inc.,* No. 91–CV–076 (Walworth County Cir. Ct.1994).

It is possible that some evidence relating to the bad faith claim, such as evidence of the amount of insurance coverage or of possible settlement offers could not have been heard in the trial of the contract claim without prejudicing Genstar. However, that problem could have been solved by bifurcating the trial. With bifurcation, the evidence common to both claims could have been presented at the same time and not in separate lawsuits held in different courts, years apart. *See Porn,* 93 F.3d at 36. When plaintiffs raised the issue of bringing the bad faith claim in the Walworth County action, Genstar indicated that it would request bifurcation. But, even if bifurcation was required, the bulk of the evidence relating to both claims formed a convenient trial unit.

### 3. Parties' Expectations

The third Restatement factor is whether treating the underlying facts as a trial unit reflects the expectations of the parties. Because the two claims here arose in the same time frame out of similar facts, one would reasonably expect them to be brought together. *See* 18 Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 4407 (1981) ("Defendants may reasonably demand that disposition of the first suit establish repose as to all matters that ordinary people would intuitively count part of a single basic dispute."); *Porn,* 93 F.3d at 37. Neither party should

have been surprised had the claims been joined.

In fact, the parties contemplated joining the claims. As quoted above, at the January 11, 1994 conference in Walworth County, plaintiffs' counsel requested that he be allowed to bring a motion to add the bad faith claim and said "maybe this would be an appropriate time to put together a briefing schedule on that regarding the issue of Bad Faith." Defendant responded that "if Bad Faith is going to be in the case—and I certainly wouldn't predispose the Court's decision on that—" then it would need additional trial time and would request that the trial be bifurcated. The Court stated that "I'm not going to deny you the right to do that," meaning a motion to add the bad faith claim. Thus, it would have conformed to the parties' expectations to have the claims litigated together.

Moreover, both Judges Warren and Reynolds suggested that the claims be joined. Judge Warren commented unfavorably on plaintiffs' choice "not to assert the issues in a counterclaim," stating that he inferred "some type of retaliatory action by the plaintiffs against the defendants." (Order of 9/16/91 at 9–10.) Judge Reynolds stated that "Wisconsin courts have liberal rules for amending answers, Wis. Stat. § 802.09, and the trustees may be able to plead the bad faith counterclaim rather than suffer the consequences of the debtor's litigation decisions." *Dubis,* No. 95–C–440, slip op. at 4–5.

### 4. Conclusion

For the foregoing reasons, I find that each of the Restatement factors is present in this case. The facts underlying both claims are related, they form a convenient trial unit, and their treatment as a unit would have been consistent with the parties' expectations. Therefore, I conclude that both claims arose out of the same transaction and that, for purposes of the doctrine of claim preclusion, there is an identity between them.

### C. Other Arguments Against Claim Preclusion

Plaintiffs argue that even if the claims arose out of the same transaction, I never-

theless should find that claim preclusion does not bar the bad faith claim for any of three reasons: (1) Judge Warren previously determined that plaintiffs could litigate the bad faith claim in federal court, Judges Reynolds and Morton buttressed this determination, and that it is, therefore, the "law of the case;" (2) because Genstar previously asserted that the bad faith claim could be litigated in federal court, the doctrine of judicial estoppel bars Genstar from now arguing to the contrary; and (3) because plaintiffs for many years have reasonably expected to pursue their federal suit, it would be inequitable to bar it at this late date.

### 1. Law of the Case

The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *United States v. Thomas*, 11 F.3d 732, 736 (7th Cir.1993). The law of the case doctrine binds lower courts to rulings entered by a higher court earlier in litigation in the same litigation and also to their own previous rulings. *Waid v. Merrill Area Pub. Schools*, 130 F.3d 1268, 1271 (7th Cir.1997). Further, the law of the case doctrine requires a second judge assigned to a case to follow the rulings of a first judge. *Fujisawa Pharmaceutical Co. v. Kapoor*, 115 F.3d 1332, 1339 (7th Cir.1997). "The doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit.... But it is no more than a presumption, one whose strength varies with the circumstances; it is not a straitjacket." *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir.1995).

The law of the case doctrine applies only to an issue that has actually been decided. *International Union of Operating Eng'rs Local Union 103 v. Indiana Constr. Corp.*, 13 F.3d 253, 256 (7th Cir.1994). "The doctrine does not apply to statements made by the court in passing or stated as possible alternatives." 18 James Wm. Moore et al., *Moore's Federal Practice* ¶ 134.20(3) (3d ed.1998). And the doctrine does not apply to dictum in prior rulings. Moore, *supra* ¶ 134.21(2).

Plaintiffs argue that Judge Warren ruled that the bad faith claim could be tried in federal court and that this ruling is the law of the case. They point to the following statement by Judge Warren:

> If the Court stays the action, it will be able to rely on the state court's findings of fact instead of eliciting the facts contemporaneously alongside the state court in two separate proceedings. Any state court finding will reduce the amount of litigation in a parallel federal matter. If Montana prevails, she will not only be able to have her day in court, she will be leveraged into a better bargaining position if she chooses to settle out of court. If General Star prevails, Montana's claim will be mooted without both parties having to go through another expensive, time consuming procedure.

(Decision and Order of 9/16/91 at 8.) For the doctrine of the law of the case to apply, however, a judge must have previously ruled on the issue presently before me. The issue presently before me is whether plaintiffs' Walworth County judgment has preclusive effect on their bad faith claim. This issue never came before Judge Warren. Judge Warren's statement was not a ruling on claim preclusion. It was, at most, a prediction about the future course of the case.

The issue of claim preclusion did not arise until plaintiffs obtained judgment on their breach of contract counterclaim. In September 1991, when Judge Warren said that plaintiffs could have their day in federal court, plaintiffs had neither filed their counterclaims nor taken a judgment. Based on the then-existing facts, Judge's Warren's prediction was probably correct, because under Wisconsin's permissive counterclaim law, plaintiffs could have pursued their bad faith claim in federal court. However, once plaintiffs filed counterclaims in Walworth County and obtained a judgment, the posture of the case changed. All of plaintiffs' unfiled claims arising out of the same transaction were subject to claim preclusion. Thus, Judge Warren's prediction is not the law of the case and, after plaintiffs' counterclaim and judgment in Walworth County, was no longer even a reliable prediction.

Plaintiffs also contend that statements by Judges Morton and Reynolds support their law of the case argument. While Judge Morton was initially skeptical about plaintiffs' proposal to add bad faith to the Walworth County lawsuit, he said that he would permit plaintiffs to move to amend their counterclaim to add the bad faith claim. Judge Reynolds also suggested that plaintiffs might be able to add the bad faith claim in Walworth County and said that "because the trustees have not raised the issue, the court assumes it is not a problem." *Dubis*, No. 95–C–440, slip op. at 4–5. Neither of these statements adds anything to plaintiffs' law of the case argument in *this case* and, if anything, might reasonably have alerted plaintiffs to the lurking problem of claim preclusion. In sum, for the foregoing reasons, I find plaintiffs' law of the case argument to be without merit.

### 2. Judicial Estoppel

Plaintiffs contend that the doctrine of judicial estoppel bars Genstar from arguing in support of the claim preclusiveness of the Walworth County judgment. Plaintiffs point to Genstar's previous assertion before Judge Reynolds that "the bad faith claim should be litigated in the Federal Court Action after completion of the Walworth County Action." Appellee's Brief at 5,8, *Dubis*, No. 95–C–440. Plaintiffs contend that because Genstar made this argument, it is now estopped from asserting that claim preclusion bars further federal proceedings on the bad faith claim.

Judicial estoppel is a doctrine intended to prevent perversion of the judicial process. *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir.1990); *State v. Petty*, 201 Wis.2d 337, 350, 548 N.W.2d 817 (1996).[4] It is to be applied where a party takes a position in a lawsuit and prevails and then intentionally takes the opposite position in an effort to obtain unfair advantage in a judicial proceeding. "The offense is not taking inconsistent positions so much as it is winning, twice, on

the basis of the incompatible positions." *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1548 (7th Cir.1990). However, the circumstances in which the doctrine may be invoked are not reducible to any formulation of principle. *Cassidy*, 892 F.2d at 641. Estoppel is an equitable concept and its application is within the sound discretion of the court. *Id.* at 642.

Further, the party, but not the court, is bound by a party's assertions. Estoppel does not eliminate a claim or defense but only prohibits a particular party from asserting it. *Id.* The doctrine is designed to prevent cold manipulation, not innocent inconsistency or apparent inconsistencies that are actually reconcilable. *Id.*

For several reasons I find that judicial estoppel is inapplicable in the present case. First, there is no inconsistency between Genstar's previously arguing that, per Judge Warren, the bad faith claim could proceed in federal court and its present assertion that plaintiffs' judgment has a preclusive effect. A critical intervening event occurred between the two arguments, namely, that plaintiffs obtained a judgment.

Second, Genstar did not "prevail" before Judge Reynolds on the issue of whether the federal bad faith suit could go forward. This is so for two reasons: (1) Judge Reynolds did not decide the issue; and (2) the position of both parties on the issue was identical. The only issue Judge Reynolds decided was whether to lift the automatic stay. The issue of whether plaintiffs' federal bad faith suit could go forward was not even in dispute. Both parties assumed that the federal case could go forward and made different arguments based on this assumption. Genstar argued that because plaintiffs could bring the bad faith claim later, they would not be prejudiced by proceeding in Walworth County. Plaintiffs argued that litigating in Walworth County and later in federal court would be inefficient. As it turns out, the

---

4. It is not entirely clear whether judicial estoppel is a procedural doctrine to be governed by federal law or a substantive concept governed by state law. *Compare Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1550 (7th Cir.1990) (court accepted parties' assumption that federal law applies) *with Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1397 (7th Cir.1992) (applying state law). In this case it makes no difference because state and federal law on judicial estoppel is the same.

parties' mutual assumption that the bad faith claim would proceed in federal court was wrong. But it cannot be said that Genstar prevailed on the issue of whether the bad faith claim could proceed, thus judicial estoppel does not come into play.

Third, I find no evidence that Genstar attempted to obtain unfair advantage in a judicial proceeding. The doctrine of judicial estoppel is designed to prevent perversion of the court. *Id.* Genstar made no attempt to pervert the court. In fact, Genstar never mentioned the issue of claim preclusion until I brought it up. Genstar cannot be blamed for arguing an issue that I asked the parties to brief.

 Judicial estoppel is an equitable doctrine and its application is within the sound discretion of the court. *Id.* For the foregoing reasons I find that Genstar is not judicially estopped from arguing in support of claim preclusion.

### 3. Equitable Considerations

 Plaintiffs contend that since Judge Warren's ruling in September 1991 they have reasonably expected to pursue their bad faith claim in federal court, and that it would be inequitable to prevent them from doing so. Although generally Wisconsin's interpretation of claim preclusion is similar to the Seventh Circuit's, *Leaf,* 979 F.2d at 600, when deciding whether a particular judgment is final Wisconsin law appears to provide more room for consideration of equitable factors than does federal law. Under Wisconsin law three public policy concerns arise including fairness to the party against whom finality is asserted, conservation of judicial resources, and prevention of inconsistent decisions. *Newhouse v. Citizens Security Mut. Ins.,* 170 Wis.2d 456, 468, 489 N.W.2d 639 (1992). Under federal law, there is no general equitable principle that will permit a court to refuse application of the claim preclusion doctrine on the grounds of unfairness to a party. *Federated Dept. Stores v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). In *Moitie,* the United States Supreme Court emphatically rejected a public policy argument against claim preclusion stating: "public policy dictates that there be an end of litigation." *Id.*

 I apply the Wisconsin standard in this case. However, it is not unfair to plaintiffs to bar further proceedings on their bad faith claim based on claim preclusion. Plaintiffs' predicament is largely of their own making. From the beginning of this litigation (now approaching its eighth year), plaintiffs have assiduously sought to avoid a trial on the bad faith claim in Walworth County. In pursuing this goal, plaintiffs lost sight of the possibility that they might lose the opportunity to try the claim at all.

On the face of it, the parties' choices of fora appear odd. Genstar, a Connecticut insurance company, was so eager to be in rural Walworth County that it filed a declaratory judgment suit one day after denying the claim, while Sugar Shack, a local small business, wanted to be in federal court. Possibly, these choices are explained by the fact that Sugar Shack was known for featuring male strippers as entertainment. Perhaps both parties thought that Sugar Shack's notoriety would be a handicap before a local jury. If so, the jury confounded expectations by awarding compensatory damages to plaintiffs of $260,000 and consequential damages (later set aside by the court) of over $3 million.

Plaintiffs' response to Genstar's suit was to file two additional lawsuits, one in Milwaukee County and one in this court. Genstar then obtained an order from Judge Warren staying this case. Judge Warren's order, however, was not a guaranty to plaintiffs that they could always come back to federal court. Plaintiffs were not unaware of the potential claim preclusion problem. Their counsel identified the issue during the colloquy in Judge Morton's court in January 1994. But, for whatever reasons, plaintiffs never moved to add the bad faith claim in the Walworth County action.

Plaintiffs may believe that it is unfair to apply claim preclusion in this case because they did not know that they could not split counterclaims or that their breach of contract and insurance bad faith claims would be regarded as arising out of the same transaction. I believe, however, that both of these conclusions are relatively easily derived from the Restatement, from the clear direction of

case law, and from the policies underlying the doctrine of claim preclusion. Thus, there is no equitable reason to deny the Walworth County judgment preclusive effect.

One of the policy reasons underlying claim preclusion is conservation of judicial resources. The present dispute was tried on the merits in Walworth County then appealed to the Wisconsin Court of Appeals and the Wisconsin Supreme Court. In addition, four federal judges, Judge Warren, Bankruptcy Court Judge Dale E. Ihlenfeldt, Judge Reynolds and myself, have spent considerable time on the case, dealing not with the merits but only with plaintiffs' efforts to escape from Walworth County. While I do not fault plaintiffs for seeking the forum they regarded as most favorable, on the other hand it is not unfair to hold that additional federal proceedings are barred by claim preclusion.

**THEREFORE, IT IS ORDERED** that defendant's motion for summary judgment on the basis of claim preclusion be and hereby is **GRANTED** and this case is **DISMISSED.** As a result, defendant's two motions to dismiss are moot and do not require decision.